Christina H. Kroll (SBN 323026)
ckroll@proskauer.com
Proskauer Rose LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

*Additional Counsel Listed in Signature Block*

**IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, ALAMO RECORDS LLC, ARISTA MUSIC, ARISTA RECORDS LLC, LAFACE RECORDS LLC, PROVIDENT LABEL GROUP LLC, RECORDS LABEL LLC, SONY MUSIC ENTERTAINMENT US LATIN LLC, ULTRA RECORDS LLC, and ZOMBA RECORDING LLC.<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO., 84.51° LLC, DILLON COMPANIES, LLC, RALPHS GROCERY COMPANY, FRED MEYER STORES, INC., FRED MEYER JEWELERS, INC., SMITH'S FOOD & DRUG CENTERS, INC., ROUNDY'S, INC., ROUNDY'S ILLINOIS, LLC, MEGA MARTS, LLC, ULTRA MART FOODS, LLC, ULTIMATE MART, LLC, SHOP-RITE LLC, HARRIS TEETER, LLC, MURRAY'S CHEESE LLC, MURRAY'S LIC LLC, RELISH LABS LLC, KROGER LIMITED PARTNERSHIP I, VITACOST.COM, INC., AND DOES 1–50,<br><br>Defendants. | C.A. No. 2:26-cv-09358<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. This action is to stop the Kroger Parties' rampant infringement of Sony Music's sound recording copyrights in advertisements posted to the Kroger Parties' social media accounts and through "influencers" whom the Kroger Parties pay to promote their products and brands, and to recover damages.[1]

2. The Kroger Co. is one of America's largest grocery and retail conglomerates.

3. It operates a portfolio of brands and stores—including Kroger, Mariano's, Murray's Cheese, Fred Meyer Jewelers, Ralphs, Ruler Foods, Harris Teeter, and more—with thousands of retail locations nationwide.[2]

4. Social media contributes materially to the Kroger Parties' marketing strategy.

5. The Kroger Co. is responsible for its corporate social media accounts—@kroger, @krogerco, @krogerdfw, and @privateselection ("Kroger Co. Social Media Pages").

6. Each of the Kroger Subsidiaries (as defined herein) maintains and is responsible for its own social media accounts (the "Subsidiary Social Media Pages" and, together with the Kroger Co. Social Media Pages, the "Social Media Pages").

7. The Social Media Pages are populated with videos advertising the Kroger Parties' products and brands, showcasing their latest sales and promotions, and featuring their stores and branded products.

---

[1] Except where otherwise noted, "Kroger Parties" refers collectively to all Defendants, and "Sony Music" refers to Plaintiffs.

[2] *See* https://www.thekrogerco.com/about/our-business/; https://www.thekrogerco.com/ir-feed-item/kroger-reports-first-quarter-2026-results/; https://www.statista.com/topics/4404/kroger-company/#google_vignette; https://www.foodindustry.com/articles/brands-and-banners-owned-by-kroger/

8. The Kroger Parties amplified the appeal and reach of this social media marketing through willful and repeated infringement of popular and valuable sound recordings owned or controlled by Sony Music.

9. Sony Music owns and/or controls the copyrights to, or otherwise possesses the exclusive rights to enforce copyrights in, a vast catalog of sound recordings spanning genres, artists, and decades, including many of the most iconic, popular, and commercially successful recordings in the world (collectively, and without regard to whether any particular recording is referenced in or is the subject of this Complaint, the "Sony Music Recordings").

10. As of the date of this Complaint, Sony Music has identified at least 392 unique unauthorized uses of Sony Music Recordings on the Social Media Pages and the pages of the Kroger Parties' third-party influencers and other third parties affiliated with or engaged by the Kroger Parties (the "Videos"), listed in **Exhibit 1**.

11. The Sony Music Recordings the Kroger Parties infringed include some of the biggest hits by household names, as well as tracks featuring up-and-coming artists.

12. The Videos are advertisements.

13. The Videos promote the various Kroger Parties' brands, stores, products, and latest sales.

14. The Sony Music Recordings are central to the effectiveness and appeal of the Videos.

15. The Videos capitalize on the popularity, artistry, and entertainment value of the Sony Music Recordings.

16. The Videos often include the catchiest and most familiar parts of the Sony Music Recordings.

17. By using Sony Music Recordings, the Kroger Parties entice social media users interested in the artist and/or the Sony Music Recording exploited.

18. This enables the Kroger Parties to take advantage of the social media platforms' algorithms and reach users who do not necessarily follow the Social Media Pages.

19. The Kroger Parties' infringement is willful.

20. The Kroger Parties know licenses are required for this use of Sony Music Recordings.

21. Indeed, Kroger Co. has previously entered into numerous licenses with Sony Music to include Sony Music Recordings within its advertisements, and the advertisements of its subsidiaries, explicitly including terms for use on the internet and social media.

22. Despite this, the Kroger Parties chose not to obtain permission or pay for the use of Sony Music's copyrighted recordings.

23. Sony Music first put the Kroger Parties on notice of their infringement as early as June 30, 2025, and continued to give the Kroger Parties notice as Sony Music's investigation identified additional infringements.

24. Yet the Kroger Parties have made no effort to stop their infringing activities.

25. In fact, the Kroger Parties have continued to post new infringing content, including as recently as August 12, 2026.

26. The majority of the Videos Sony Music identified remained available at least as of May 28, 2026, on the Social Media Pages, with some still available as of the filing of this Complaint, and the Kroger Parties' continued hosting and dissemination of those Videos constitutes ongoing copying, distribution, and/or transmission of the Sony Music Recordings embodied in them.

27. Since notifying the Kroger Parties of their infringements, Sony Music repeatedly requested that the Kroger Co. enter into a tolling agreement on its behalf and

on behalf of its subsidiaries so that the parties could pursue settlement discussions without prejudicing either side's rights. The Kroger Co. refused.

28. The Kroger Parties' continued infringing conduct, combined with their persistent refusal to agree to a tolling arrangement, left Sony Music with no choice but to file this action to protect its rights.

29. Sony Music's investigation is ongoing, and there are undoubtedly additional infringing videos Sony Music has yet to discover, including content made available for only a limited time on features such as Instagram Stories, Snapchat, TikTok Stories, and the like – platforms and features the Kroger Parties use for social media marketing.[3]

30. To the extent any Video was posted more than three years before the filing of this Complaint, Sony Music's claims with respect to that Video are timely because this action was commenced within three years of the date Sony Music discovered, or reasonably should have discovered, that Video, and the Kroger Parties have continued to disseminate those Videos, in certain instances as recently as of the filing of this Complaint.

31. The Kroger Parties' conduct has caused, and continues to cause, substantial and irreparable harm to Sony Music, while enriching the Kroger Parties at the expense of Sony Music and its artists.

## JURISDICTION AND VENUE

32. This Court has original subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. §§ 1331 and 1338(a).

33. This Court has personal jurisdiction over each Defendant based on that Defendant's conduct directed at, and contacts with, California.

---

[3] For example, the Kroger Parties posted ephemeral Instagram Stories exploiting Beyoncé's "CUFF IT" on the @marianosmarket account on May 21, 2025; Miley Cyrus' "Flowers" on the @harristeeter account on May 7, 2025; Outkast's "Hey Ya!" on the @marianosmarket account on June 2, 2026; Britney Spears' "(You Drive Me) Crazy" on the @realhomechef account on May 20, 2026; and Bruce Springsteen's "Born in the U.S.A." on the @krogerdfw account on May 25, 2026.

34. Each Defendant purposefully directed its infringing conduct at California and the California market through content posted to its own social media pages, content disseminated by its influencers and other third parties, and content created or distributed by the agencies it retained. The infringing Videos advertised each of the Defendants' stores and products and were disseminated to California consumers as part of the nationwide social media marketing strategy giving rise to Sony Music's claims, thereby causing harm in California. Moreover, Defendants the Kroger Co., Ralphs Grocery Company, Relish Labs LLC, Fred Meyer Jewelers, Inc., and Murray's Cheese LLC maintain substantial operations in California, including retail stores, distribution and fulfillment facilities, and Defendants the Kroger Co., Ralphs Grocery Company, Fred Meyer Jewelers, Inc., Fred Meyer Stores, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Murray's Cheese LLC, Relish Labs LLC, and Vitacost.com, Inc. conduct e-commerce operations, online consumer services, and nationwide delivery partnerships through which California consumers can purchase products, obtain services, or arrange for delivery within the state.

35. A material amount of harm from each Defendant's infringing conduct was suffered in California, including the unauthorized reproduction, distribution, and/or public performance via digital audio transmission of the Sony Music Recordings, and the creation of unauthorized derivative works, occurring within California as a result of California consumers' access to, and viewing of, the infringing Videos.

36. Venue is proper in this District under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because each Defendant resides in and/or may be found in this District, in that each Defendant would be amenable to personal jurisdiction in this District for the reasons set forth herein and in the Parties section below, and because a substantial part of the events giving rise to Sony Music's claims occurred in this District.

## THE PARTIES

**A. *The Plaintiffs***

37. Plaintiff Sony Music Entertainment ("SME") is a Delaware general partnership, engaged in the business of recorded music and headquartered in New York City. SME's principal place of business is 25 Madison Avenue, New York, New York 10010. SME also maintains an office within this District, located at 10202 W. Washington Blvd., Akio Morita Building, 5th Floor, Culver City, Los Angeles, California 90232.

38. Plaintiff Alamo Records, LLC ("Alamo") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

39. Plaintiff Arista Music ("Arista Music") is a New York partnership with its principal place of business at 25 Madison Avenue, New York, New York 10010.

40. Plaintiff Arista Records, LLC ("Arista Records") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

41. Plaintiff LaFace Records LLC ("LaFace") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

42. Plaintiff Provident Label Group, LLC ("Provident") is a Delaware Limited Liability Company with its principal place of business at 741 Cool Springs Blvd in Franklin, Tennessee.

43. Plaintiff Records Label, LLC ("Records Label") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

44. Plaintiff Sony Music Entertainment US Latin LLC ("Sony Latin") is a Delaware Limited Liability Company with its principal place of business at 545 NW 26th St. Suite 100, Miami FL 33127.

45. Plaintiff Ultra Records, LLC ("Ultra") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

46. Plaintiff Zomba Recording LLC ("Zomba") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

47. Alamo, Arista Music, Arista Records, LaFace, Provident, Records Label, Sony Latin, Ultra, and Zomba (the "SME Affiliates") are companies owned by or affiliated with Sony Music Entertainment.

**B. *The Defendants***

48. **Defendant The Kroger Co.** is incorporated in Ohio and headquartered in Cincinnati, Ohio, with its principal place of business at 1014 Vine Street, Cincinnati, Ohio 45202. The Kroger Co. is the ultimate parent of the Kroger enterprise and of each of the other named corporate Defendants in this action, among others, including 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Murray's Cheese LLC, Murray's LIC LLC, Harris Teeter, LLC, Relish Labs LLC, Kroger Limited Partnership I, and Vitacost.com, Inc. (each a "Kroger Subsidiary" and collectively, the "Kroger Subsidiaries").[4]

---

[4] Kroger acquired Vitacost.com, Inc. in August 2014, after which Vitacost operated as a Kroger subsidiary. Kroger announced the sale of Vitacost.com, Inc. to iHerb on January 8, 2026. Each of the infringements by Vitacost.com, Inc. included in Exhibit 1 occurred when Vitacost.com, Inc. was a wholly owned subsidiary of The Kroger Co.

49. The Kroger Co. is one of the world's largest retailers and the largest supermarket chain in the United States operating—directly and through wholly-owned subsidiaries—more than 2,700 stores nationwide, including hundreds of stores in California under dozens of retail banners. It is registered to do business and maintains a registered agent in California. The Kroger Co. owns or leases hundreds of California retail locations, distribution centers, and support facilities, and employs tens of thousands of California residents. The Kroger Co. employs California residents who specifically oversee its marketing operations, including social media advertisements.[5] The Kroger Co. has voluntarily and repeatedly used California courts, including this Court, to litigate matters arising from and related to its California business operations, its California advertising, and its California consumer-facing conduct. This includes a lawsuit filed by the Kroger Co. and its subsidiary Ralphs (as defined herein) to enforce and protect their intellectual property rights.[6]

50. The corporate social media accounts @kroger, @krogerco, @krogerdfw, and @privateselection—bearing the Kroger Co.'s trademarks and promoting products sold under the Kroger Co.'s brands—are, on information and belief, operated by the Kroger Co. or by its agents acting at its direction and for its benefit. From these accounts, at least 76 unauthorized Videos featuring Sony Music Recordings have been posted. Each of these Videos was, and in most cases as recently as May 28, 2026, remained viewable on demand by any consumer in California with an internet connected device. On information and belief, a substantial share of the audience for

---

[5] https://www.linkedin.com/in/victoria-smith-52724036/ - Marketing Manager (job description includes, "Identify the insight and customer opportunity for cross-channel content…"); https://www.linkedin.com/in/sarah-heisler-31474818a/ - SVP Marketing; https://www.linkedin.com/in/joe-stevens-734392149/ -Marketing Manager; https://www.linkedin.com/in/avivah-lamarque-823021201/ - Marketing Specialist.

[6] *Ralphs Grocery Co. v. Indio Furniture 4 Less Inc.*, No. 5:18-cv-02190 (C.D. Cal., 2018).

each Video was located in California – the state that the Kroger Co. has the most retail stores – and which represents approximately 12% of the population of the United States.

51. In addition to content posted directly to the Kroger Co. Social Media Pages, the Kroger Co. engages influencers to promote the Kroger Co.'s brands, stores, and products to consumers across the United States, including California consumers. On February 27, 2026, Instagram user @dineinfoodies posted a commercial Instagram Video in collaboration with @krogerdfw promoting products sold at Kroger stores, including chicken purchased from a local Kroger grocery store, exploiting Ricky Martin's "Livin' La Vida Loca" without authorization. The caption described the Video as a "Dineinfoodies recipe development video," promoted "Chicken from our local Kroger grocery store," and included promotional food-related hashtags.

52. The Kroger Co. runs the Kroger enterprise's marketing function, including its social media advertising and influencer marketing operations.[7] Kroger Precision Marketing ("KPM")—a division of the Kroger Co.'s wholly-owned subsidiary 84.51° LLC that Kroger describes as a core component of Kroger's "Alternative Profit Businesses"—designs, executes, and monetizes targeted digital advertising campaigns on behalf of every Kroger banner, including its California-based banners Ralphs, Food 4 Less, and Foods Co., its California-incorporated jewelry subsidiary Fred Meyer Jewelers, Inc., and its nationwide meal-kit subsidiary Relish Labs LLC (Home Chef), which fulfills orders to California consumers from Relish Labs' California facility.

53. The Kroger Co. directly markets and sells its Private Selection, Simple Truth, Kroger Brand, and other private-label product lines advertised in the Videos to California consumers through California retail stores operated by its wholly-owned subsidiaries—including Ralphs Grocery Company and Food 4 Less of California, Inc.

---

[7] *See* https://www.linkedin.com/feed/update/urn:li:activity:7491486764214173696/ ("The best ads don't feel like ads. That's why creator content resonates during one of the noisiest times of the year. Influencers give brands a voice that shoppers already trust as they look for holiday inspiration and product recommendations. Hear KPM experts share how brands can use creator partnerships to shape purchase decisions, and explore more ways to win during this holiday season.")

Each of Kroger's private-label brands is owned by the Kroger Co., and each is expressly promoted in the infringing Videos posted from Kroger-controlled social media accounts.

54. **Defendant 84.51° LLC** is wholly owned by the Kroger Co., organized as an Ohio limited liability company, with its principal place of business in Cincinnati, Ohio. 84.51° LLC ("84.51°") is a retail data science, insights, and media company that, among other things, manages KPM, Kroger's advertising and media platform, through which Kroger runs social media advertising campaigns nationwide, including campaigns directed at California consumers. 84.51° operates and controls the @84.51 Instagram account. From that account, 84.51° has posted at least three unauthorized Videos featuring Sony Music Recordings. Each of these Videos was, and as recently as May 27, 2026, remained viewable on demand by any consumer with an internet connected device in California.

55. 84.51° operates KPM, a retail media network that sells targeted digital advertising to consumer-packaged goods companies, advertising agencies, and publishers using 84.51°'s first-party retail data. Through KPM, 84.51° markets and sells advertising services directed at California consumers, including through partnerships with Pinterest, Roku, The Trade Desk, Google, and—on information and belief—TikTok, each of which reaches California residents. 84.51° functions as the media and advertising engine for Kroger's California-facing banners, including Ralphs, Food 4 Less, and Foods Co.

56. **Defendant Fred Meyer Stores, Inc.** ("Fred Meyer Stores") is a corporation organized under the laws of Ohio and a wholly owned subsidiary of the Kroger Co., with its principal place of business in Portland, Oregon. Fred Meyer Stores operates retail stores under the Fred Meyer banner. Upon information and belief, Fred Meyer Stores operates and controls the @fredmeyerstores Instagram account, bearing the "Fred Meyer" banner mark. From that account, Fred Meyer Stores has posted at

least one unauthorized Video featuring a Sony Music Recording. Specifically, on May 6, 2025, @fredmeyerstores collaborated with @krogerco and @ralphsgrocery on an Instagram post using RUN-DMC's "Peter Piper" without authorization. That Video was, and as recently as May 28, 2026, remained, viewable on demand by any consumer with an internet-connected device in California. Fred Meyer Stores maintains a website that includes California Privacy Rights and a Notice for California Dietitian Patients and, upon information and belief, offers virtual nutrition counseling and telemedicine services to California residents subject to California-specific consent requirements. This Court has personal jurisdiction over Fred Meyer Stores because, among other things, it purposefully avails itself of and targets the California market by directing its social media advertising and other digital marketing to consumers nationwide, including California; maintaining California-specific privacy notices and healthcare disclosures and consent procedures for California residents; collaborating with the Kroger Co. and Ralphs Grocery Company to disseminate the infringing Video as part of the Kroger enterprise's coordinated nationwide social media marketing strategy; and making that Video available for viewing by California consumers, from which Sony Music's claims arise.

57. **Defendant Fred Meyer Jewelers, Inc.** is a corporation organized under the laws of California and a subsidiary of Fred Meyer Stores, Inc., which is in turn a wholly owned subsidiary of the Kroger Co. Its principal place of business is in Portland, Oregon. Fred Meyer Jewelers, Inc. ("Fred Meyer Jewelers") advertises and sells jewelry products to consumers nationwide, including in California, through its interactive website and social media. Fred Meyer Jewelers operates and controls the corporate social media accounts @fredmeyerjewelers, @fredmeyersjewelers, and @fmj_fredmeyerjewelers on Instagram, TikTok, and Facebook. From these accounts, Fred Meyer Jewelers has posted at least 21 unauthorized Videos featuring Sony Music Recordings. Each of these Videos was, and as recently as May 28, 2026, remained,

viewable on demand by any consumer with an internet-connected device in California. Each Video is commercial content promoting Fred Meyer Jewelers' products and Fred Meyer Jewelers' e-commerce website, and each was directed to consumers across the United States, including California residents. Fred Meyer Jewelers operates the fredmeyerjewelers.com and littmanjewelers.com e-commerce websites, which are accessible to and used by California consumers to purchase Fred Meyer Jewelers products for delivery in California. Fred Meyer Jewelers has a California customer service address at 1000 W. 190th Street, Dept. R, Torrance, California 90502, as identified in its customer service page.

58. **Defendant Roundy's, Inc.** is a Delaware corporation headquartered in Milwaukee, Wisconsin, and a wholly-owned subsidiary of the Kroger Co. Roundy's, Inc. is the operating company responsible for the operations, merchandising, branding, and promotional marketing of Mariano's, Metro Market, and Pick 'n Save banners. The Kroger Co. combined the Mariano's banner with its Wisconsin banners to form the "Roundy's Division," based in Milwaukee and led by a single President overseeing all three banners, and Roundy's, Inc. has invested in cross-banner initiatives, including merchandising and joint promotional marketing campaigns. On information and belief, Roundy's, Inc. directs, controls, and has the right and ability to supervise the operations, merchandising, branding, and social media marketing activities for Mariano's, Pick n' Save and Metro Market. Through its operational and merchandising oversight of the Mariano's banner, upon information and belief, Roundy's, Inc. participates in the operation of the marianos.com e-commerce website, which is accessible to and used by California consumers, which, in express recognition of its ongoing business with California residents, includes, a "Privacy Notice for California residents" that expressly complies with the California Consumer Privacy Act. Products sold under the Metro Market and Pick 'n Save banners are likewise available for delivery to California consumers through Kroger's nationwide partnerships with DoorDash and Instacart.

59. Upon information and belief, Roundy's, Inc. has the right and ability to direct, control, and supervise influencer collaborations conducted through the @marianosmarket, @mymetromarket, and @picknsavestores social media accounts to promote Mariano's, Metro Market, and Pick 'n Save products and marketing campaigns. These influencer collaborations include commercial social media posts exploiting Sony Music Recordings without authorization. For example, on April 11, 2025, @mybizzykitchen collaborated with @marianosmarket and @mymetromarket on an Instagram post exploiting Florian Christl's "Natural" without authorization while promoting Private Selection Brand Uncured Deli Pepperoni. On May 7, 2025, @mentionables_eats collaborated with @picknsavestores, @mymetromarket, and @marianosmarket on an Instagram post exploiting KAYTRANADA's "Spit It Out" without authorization. The caption expressly described the post as a "partnership and collaboration" with those Kroger-affiliated brands, stated that it was "the first of many more to come," and included the Kroger-affiliated hashtags #picknsavestores, #metromarket, and #marianosmarket. Similarly, on February 18, 2024, @flos_favorites collaborated with @marianosmarket on an Instagram post exploiting McFadden & Whitehead's "Ain't No Stoppin' Us Now" without authorization while directing consumers to purchase promoted products at Mariano's. Likewise, on January 23, 2025, and February 9, 2026, @ouu.whatscooking collaborated with @mymetromarket, @marianosmarket, and @picknsavestores on Instagram posts exploiting SZA's "Chill Baby" and another Sony Music Recording. On June 29, 2026, @lafundidora collaborated with @marianosmarket on an Instagram post exploiting Shakira and Burna Boy's "Dai Dai" without authorization while promoting La Fundidora products then on sale at Mariano's. On July 17, 2026, @flos_favorites collaborated with @marianosmarket on an Instagram post exploiting Justin Timberlake's "Summer

Love" without authorization while promoting Local Style Potato Chips and directing consumers to purchase those products at Mariano's.[8]

60. This Court has personal jurisdiction over Roundy's, Inc. because, among other things, it purposefully avails itself of and targets the California market by directing the operations, merchandising, branding, and marketing strategy (including the social media advertising containing the infringing Videos) for banners that advertise and sell products to California consumers through interactive websites, e-commerce, social media, and nationwide delivery partnerships, and because the infringing Videos disseminated through the banners it operates and controls were viewed by California consumers as part of Kroger's nationwide marketing strategy from which Sony Music's claims arise.

61. **Defendant Roundy's Illinois, LLC** (which does business as Mariano's) is a Wisconsin limited liability company and a wholly-owned subsidiary of Roundy's, Inc., which is in turn a wholly-owned subsidiary of the Kroger Co. and is headquartered in Milwaukee, Wisconsin. Roundy's Illinois, LLC ("Roundy's") operates retail grocery stores under the Mariano's banner in Illinois. Roundy's operates and controls the corporate social-media accounts @marianosmarket, @officialmarianos, and @marianos on Instagram, TikTok, and Facebook. From these accounts, Roundy's has posted at least 99 unauthorized Videos featuring Sony Music Recordings. Each of

---

[8] *See* Instagram post by @mybizzykitchen with @marianosmarket and @mymetromarket exploiting Florian Christl's "Natural" without authorization, Apr. 11, 2025, https://www.instagram.com/p/DIUwtzcPxsU; *see also* Instagram post by @mentionables with @picknsavestores, @mymetromarket, and @marianosmarket exploiting KAYTRANADA's "Spit It Out," May 7, 2025, https://www.instagram.com/p/DJXmh4ZuAwr; Instagram post by @flos_favorites with @marianosmarket exploiting McFadden & Whitehead's "Ain't No Stoppin' Us Now," Feb. 18, 2024, https://www.instagram.com/p/C3fwxGFLdvr; Instagram post by @ouu.whatscooking with @mymetromarket, @marianosmarket, and @picknsavestores exploiting SZA's "Chill Baby," Jan. 23, 2025, https://www.instagram.com/p/DFK-WbhOF33; Instagram post by @lafundidora with @marianosmarket exploiting Shakira and Burna Boy's "Dai Dai," June 29, 2026, https://www.instagram.com/p/DaLfUPUBmSZ/; Instagram post by @flos_favorites with @marianosmarket exploiting Justin Timberlake's "Summer Love," July 17, 2026, https://www.instagram.com/p/Da5wRsBOTVN/.

these Videos was, and as of May 28, 2026, a vast majority remained, viewable on demand by any consumer with an internet-connected device in California, with some remaining viewable as of the filing of this Complaint. Roundy's operates the marianos.com e-commerce website, which is accessible to and used by California consumers. In express recognition of its ongoing business with California residents, Roundy's publishes a "Privacy Notice for California residents" on marianos.com that expressly complies with the California Consumer Privacy Act.

62. In addition to its own social media posts, Roundy's Illinois, LLC, engages and collaborates with influencers and other third parties to promote Mariano's products and marketing campaigns to consumers across the United States, including California consumers. For example, on April 11, 2025, Instagram user @mybizzykitchen posted a commercial Instagram Video in collaboration with @marianosmarket and another Kroger Party exploiting Florian Christl's "Natural" without authorization while promoting Private Selection Brand Uncured Deli Pepperoni and directing consumers to purchase the product at Mariano's. On May 7, 2025, Instagram user @mentionables_eats—upon information and belief, a paid influencer of Roundy's Illinois, LLC—posted a commercial Instagram Video in collaboration with @marianosmarket and other Kroger Parties exploiting KAYTRANADA's "Spit It Out" without authorization. The caption expressly described the post as a "partnership and collaboration" with @marianosmarket and other Kroger-affiliated brands, stated that it was "the first of many more to come," and promoted products sold at Mariano's. Similarly, on February 18, 2024, Instagram user @flos_favorites posted a commercial Instagram Video in collaboration with @marianosmarket exploiting McFadden & Whitehead's "Ain't No Stoppin' Us Now"—without authorization while directing consumers to purchase promoted products at Mariano's. Likewise, on January 23, 2025, Instagram user @ouu.whatscooking posted a commercial Instagram Video in collaboration with @marianosmarket and other Kroger Parties exploiting SZA's "Chill

Baby" without authorization. On June 29, 2026, Instagram user @lafundidora posted a commercial Instagram Video in collaboration with @marianosmarket exploiting Shakira and Burna Boy's "Dai Dai" without authorization while promoting La Fundidora products on sale at Mariano's. On July 17, 2026, Instagram user @flos_favorites posted a commercial Instagram Video in collaboration with @marianosmarket exploiting Justin Timberlake's "Summer Love" without authorization while promoting Local Style Potato Chips and directing consumers to purchase those products at Mariano's. On that same post, @marianosmarket commented, "I CANT WAIT TO FALL IN LOVE," echoing lyrics from "Summer Love" and further demonstrating Roundy's Illinois, LLC's knowledge of, approval of, and affirmative participation in the infringing promotional content.[9]

63. This Court has personal jurisdiction over Roundy's Illinois, LLC because, among other things, it purposefully avails itself of the California market by advertising and selling products to California consumers through its interactive website, e-commerce, social media, and delivery partnerships, and because the infringing Videos it posted were disseminated to and viewed by California consumers as part of Kroger's nationwide marketing strategy, from which Sony Music's claims arise. The infringing Videos posted under the Mariano's brand are part of its substantial marketing strategy that drives traffic to its website and social media where California residents can

---

[9] *See* Instagram post by @mybizzykitchen with @marianosmarket and @mymetromarket exploiting Florian Christl's "Natural" without authorization, Apr. 11, 2025, https://www.instagram.com/p/DIUwtzcPxsU; *see also* Instagram post by @flos_favorites with @marianosmarket exploiting McFadden & Whitehead's "Ain't No Stoppin' Us Now," Feb. 18, 2024, https://www.instagram.com/p/C3fwxGFLdvr; Instagram post by @ouu.whatscooking with @mymetromarket, @marianosmarket, and @picknsavestores exploiting SZA's "Chill Baby," Jan. 23, 2025, https://www.instagram.com/p/DFK-WbhOF33; Instagram post by @mentionables_eats with @picknsavestores, @mymetromarket, and @marianosmarket exploiting KAYTRANADA's "Spit It Out," May 7, 2025, https://www.instagram.com/p/DJXmh4ZuAwr;; Instagram post by @lafundidora with @marianosmarket exploiting Shakira and Burna Boy's "Dai Dai," June 29, 2026, https://www.instagram.com/p/DaLfUPUBmSZ/; Instagram post by @flos_favorites with @marianosmarket exploiting Justin Timberlake's "Summer Love," July 17, 2026, https://www.instagram.com/p/Da5wRsBOTVN/.

purchase its products.[10] Roundy's created and/or posted many of the infringing Videos listed in Exhibit 1.

64. **Defendants Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, and Ultimate Mart, LLC** are Wisconsin limited liability companies and wholly-owned subsidiaries of the Kroger Co., Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, and Ultimate Mart, LLC are operating entities that run retail grocery stores in Wisconsin under the Metro Market and Pick 'n Save banners. On information and belief, they jointly or individually operate and control the corporate social media accounts @mymetromarket, @metromarket, @picknsavestores, and @picknsave on Instagram, TikTok, and Facebook. From these accounts, these Defendants have collectively posted at least 16 unauthorized Videos featuring Sony Music Recordings. Each of these Videos was, and as of the filing of this Complaint some remain, viewable on demand by any consumer with an internet-connected device in California, and the infringing Videos they posted were disseminated to and viewed by California consumers as part of Kroger's nationwide marketing strategy. Indeed, products sold under the Metro Market and Pick 'n Save banners are available for delivery to California consumers through Kroger's nationwide partnerships with DoorDash and Instacart.

65. Among these Videos, on November 27, 2020, a Video featuring The Lovin' Spoonful's "Do You Believe in Magic?" was posted to the @picknsavestores Facebook account as part of the same Kroger enterprise-wide holiday campaign posted across various Kroger Parties' accounts. That Video was initially covered by a limited 7-week license with Sony Music, authorizing use only during the license term, which commenced on November 13, 2020, and expired on December 31, 2020. The Video was confirmed viewable on demand by any consumer with an internet-connected

[10] https://ir.kroger.com/news/news-details/2025/Kroger-and-DoorDash-to-Bring-Fast-Convenient-Grocery-Delivery-to-Millions-Nationwide/default.aspx.

device in California at least as of February 2026. By keeping the Video available and viewable on demand after December 31, 2020, one or more of these Defendants exceeded the scope of such license and continued to reproduce, distribute, and publicly perform the Sony Music Recording without authorization.

66. In addition to posts made directly to the Metro Market and Pick 'n Save Social Media Pages, upon information and belief, Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, and Ultimate Mart, LLC, jointly or individually, engage and collaborate with influencers to promote Metro Market and Pick 'n Save products and marketing campaigns to consumers across the United States, including California consumers. For example, on April 11, 2025, Instagram user @mybizzykitchen posted a commercial Instagram Video in collaboration with @mymetromarket exploiting Florian Christl's "Natural" without authorization while promoting Private Selection Brand Uncured Deli Pepperoni and directing consumers to purchase the product at Metro Market. On May 7, 2025, Instagram user @mentionables_eats—upon information and belief, a paid influencer of one or more of these Defendants—posted a commercial Instagram Video in collaboration with @picknsavestores and @mymetromarket exploiting KAYTRANADA's "Spit It Out" without authorization. The caption expressly described the post as a "partnership and collaboration" with @picknsavestores and @mymetromarket, stated that it was "the first of many more to come," and included the hashtags #picknsavestores, #marianosmarket, and #metromarket. Likewise, on January 23, 2025, Instagram user @ouu.whatscooking posted a commercial Instagram Video in collaboration with @mymetromarket and @picknsavestores exploiting SZA's "Chill Baby" without authorization.[11] As recently

[11] *See* Instagram post by @mybizzykitchen with @mymetromarket and @marianosmarket exploiting Florian Christl's "Natural" without authorization, Apr. 11, 2025, https://www.instagram.com/p/DIUwtzcPxsU; *see also* Instagram post by @mentionables_eats with @picknsavestores, @mymetromarket, and @marianosmarket exploiting KAYTRANADA's "Spit It Out," May 7, 2025, https://www.instagram.com/p/DJXmh4ZuAwr; Instagram post by

as June 11, 2025, @mymetromarket reposted to Facebook a Video originally posted by @pick'nsave on June 12, 2025, exploiting Outkast's "Hey Ya!" without authorization.

67. **Defendants Murray's Cheese LLC and Murray's LIC LLC** (collectively, "Murray's Cheese") are limited liability companies organized under the laws of Ohio and New York, respectively, and are wholly-owned subsidiaries of the Kroger Co., Murray's Cheese LLC operates specialty cheese shops inside over one thousand Kroger and Kroger-owned brick and mortar storefronts nationwide, including in Kroger's California stores, and sells products to consumers nationwide, including California residents, through its e-commerce website, murrayscheese.com, with nationwide shipping. Murray's Cheese LLC operates and controls the @murrayscheese social media accounts on Instagram, TikTok, and Facebook and the @murraysmac social media account on Instagram. From these accounts, Murray's Cheese LLC has posted at least 70 unauthorized Videos featuring Sony Music Recordings. Murray's LIC LLC owns and operates the Murray's Cheese Bar restaurant in Long Island City ("LIC"), New York and operates and controls the @murrayscheesebar Instagram account. From that account, Murray's LIC LLC has posted at least 9 unauthorized Videos featuring Sony Music Recordings. Each of the Videos was, and as of May 28, 2026, the vast majority remained viewable on demand by any consumer with an internet-connected device in California, with some still viewable as of the filing of this Complaint. Each Video promotes Murray's Cheese branded products that are sold to California consumers through: (i) the online store at murrayscheese.com, which accepts orders from and ships specialty cheese products to California residents; and (ii) Murray's Cheese-branded shop-in-store counters located inside Ralphs, Food 4 Less, and other Kroger-affiliated California grocery stores. On April 10, 2023, Murray's Cheese LLC posted a collaboration Instagram Video to both the @murrayscheese and

---

@ouu.whatscooking with @mymetromarket, @marianosmarket, and @picknsavestores exploiting SZA's "Chill Baby," Jan. 23, 2025, https://www.instagram.com/p/DFK-WbhOF33;

@murraysmac accounts exploiting Bill Withers' "Lovely Day" without authorization. On July 20, 2026, Murray's Cheese posted to its @murrayscheese Instagram account a Video exploiting Harry Belafonte's "Jump in the Line" without authorization. That Video was, and as recently as August 13, 2026, remained, viewable on demand by any consumer with an internet-connected device in California. More recently, on July 28, 2026, Murray's Cheese posted to its @murrayscheese Instagram Story a Video exploiting KAYTRANADA's "Taste" without authorization.

68. Defendant **Harris Teeter, LLC** ("Harris Teeter") is a North Carolina limited liability company and a wholly owned subsidiary of the Kroger Co., with its principal place of business in Matthews, North Carolina. Harris Teeter operates retail grocery stores under the Harris Teeter banner and is part of the Kroger Co.'s family of grocery and retail brands. Upon information and belief, Harris Teeter operates and controls the @harristeeter social media accounts on Instagram and other social media platforms, each bearing the "Harris Teeter" banner mark. From those accounts, Harris Teeter has posted at least one unauthorized Video featuring a Sony Music Recording. On May 7, 2025, the @harristeeter Instagram account reposted the Instagram Story of Instagram user and influencer @homeswithalicia, exploiting Miley Cyrus's "Flowers" without authorization. That Instagram Story appeared on both the @harristeeter and @homeswithalicia accounts and was available to users for twenty-four hours, including consumers in California with an internet-connected device. Harris Teeter maintains a website that includes a Privacy Notice for California Residents and provides California residents with rights regarding the collection, use, sale, sharing, and disclosure of their personal information under the California Consumer Privacy Act. This Court has personal jurisdiction over Harris Teeter because, among other things, it purposefully avails itself of and targets the California market by directing its social media advertising and other digital marketing to consumers nationwide, including California; maintaining a website and privacy practices that expressly recognize and provide rights to California

residents under California law; and disseminating the infringing Instagram Story under the Harris Teeter brand to and for viewing by California consumers as part of the Kroger enterprise's nationwide marketing strategy, from which Sony Music's claims arise.

69. **Defendant Dillon Companies, LLC** (which does business as Baker's, Dillon's, and King Soopers) is organized under the laws of Kansas and is a wholly owned subsidiary of the Kroger Co., Dillon Companies, LLC ("Dillon") operates retail grocery stores under the Baker's, Dillon's, and King Soopers banners. Dillon, on information and belief, operates and controls the @dillons, @kingsoopers, @citymarket and @bakers social media accounts bearing its City Market and Baker's, Dillon's and King Soopers' banner marks, respectively. From these accounts, Dillon has posted at least four Videos featuring the same Sony Music Recording—Lovin' Spoonful's "Do You Believe in Magic?"—promoting the same Kroger enterprise-wide holiday campaign posted across various Kroger Parties' accounts. These Videos were initially covered by a limited 7-week license with Sony Music, authorizing use of that recording in the holiday campaign on television, radio, the internet, and social media only during the license term, which commenced on November 13, 2020 and expired on December 31, 2020. These Videos were viewable on demand by any consumer with an internet-connected device in California after the license expiration date—with one of the Videos remaining viewable as recently as May 28, 2026. By keeping the Videos available and viewable on demand after December 31, 2020, Dillon exceeded the scope of such license and continued to reproduce, distribute, and publicly perform the Sony Music Recording without authorization. This Court has personal jurisdiction over Dillon because, among other things, it purposefully avails itself of and targets the California market by directing its social media advertising to consumers nationwide, including California, and because the infringing Videos posted under the Baker's and City Market brands were disseminated to and viewed by California consumers as part

of the Kroger enterprise's nationwide marketing strategy, from which Sony Music's claims arise.

70. **Defendant Smith's Food & Drug Centers, Inc.** (which does business as Fry's Food Stores) is a corporation organized under the laws of Ohio and a wholly-owned subsidiary of the Kroger Co., Smith's Food & Drug Centers, Inc. (d/b/a "Fry's Food Stores") operates retail grocery stores under the Fry's Food Stores banner. Fry's Food Stores was founded in 1954 by Donald Fry in California.[12] This Court has personal jurisdiction over Fry's Food Stores because, among other things, it purposefully directs its social media advertising at consumers nationwide, including in California, maintains a website that expressly acknowledges and complies with California privacy law and provides California-specific privacy tools for California consumers, and the infringing Videos it posted under the Fry's Food Stores banner were disseminated to and viewed by California consumers. Fry's Food Stores, on information and belief, operates and controls the @frysfoodstores Facebook channel bearing its Fry's Food Stores mark. From that channel, Fry's Food Stores posted at least one unauthorized Video featuring a Sony Music Recording. Specifically, on November 27, 2020, Fry's Food Stores posted to its @frysfoodstores Facebook account a Video featuring The Lovin' Spoonful's "Do You Believe in Magic?" as part of the same Kroger enterprise-wide holiday campaign. That Video was initially covered by a limited 7-week license with Sony Music, authorizing use only during the license term, which commenced on November 13, 2020 and expired on December 31, 2020. The Video was confirmed viewable on demand by any consumer with an internet-connected device in California at least as of February 3, 2026. By keeping the Video available and viewable on demand after December 31, 2020, Fry's Food Stores exceeded the scope of such license and continued to reproduce, distribute, and publicly perform the Sony Music Recording without authorization.

---

[12] *See* https://www.linkedin.com/company/fry's-food-and-drug.

71. **Defendant Ralphs Grocery Company** is wholly owned by the Kroger Co., and is a corporation organized under the laws of Ohio with its principal place of business in Compton, California. Ralphs Grocery Company ("Ralphs") operates approximately 182 retail grocery stores across California under the Ralphs banner, also does business as Food 4 Less, and maintains major California distribution, warehousing, and manufacturing facilities, including the Compton Central Facilities Complex and a bakery facility in La Habra, California. Ralphs also advertises and sells its products to California consumers through its stores, website, e-commerce, and social media, including through Videos posted to the @ralphs Facebook account and @ralphsgrocery Instagram account, and upon information and belief, either directly or jointly with its co-operator, Food 4 Less California, the @myfood4less TikTok account. On November 27, 2020, a Video was posted to the Ralphs Facebook account featuring The Lovin' Spoonful's "Do You Believe in Magic?" as part of the same Kroger enterprise-wide holiday campaign posted across various Kroger Parties' accounts. That Video was initially covered by a limited 7-week license with Sony Music, authorizing use only during the license term, which commenced on November 13, 2020 and expired on December 31, 2020. That Video was, and as recently as August 17, 2026, remained, viewable on demand by any consumer with an internet-connected device in California. By keeping the Video available and viewable on demand after December 31, 2020, Ralphs exceeded the scope of such license and continued to reproduce, distribute, and publicly perform the Sony Music Recording without authorization. On May 6, 2025, @ralphsgrocery, in a collaboration with @krogerco and @fredmeyerstores, posted an Instagram Video, using RUN-DMC's "Peter Piper" without authorization. Each of these Videos was, and as recently as May 28, 2026, remained, viewable on demand by any consumer with an internet-connected device in California. Each Video was directed at California consumers, because the Ralphs banner promoted in the Videos posted to the @ralphsgrocery and @ralphs social media accounts consists

overwhelmingly of California retail stores that Ralphs Grocery Company itself operates.

72. **Defendant Relish Labs LLC** (which does business as Home Chef) is a limited liability company organized under the laws of Delaware and a wholly owned subsidiary of the Kroger Co., Relish Labs LLC (d/b/a "Home Chef") is a nationwide direct-to-consumer meal-kit and prepared-meal delivery service, which ships meal kits to consumers in 98% of the continental United States, including California. Home Chef operates a production and distribution facility in San Bernardino, California, which serves as Home Chef's West Coast production hub—a 200,000+ square-foot facility that includes 107,134 square feet of warehouse space, 79,642 square feet of food preparation space, and 17,907 square feet of office space. Home Chef operates the homechef.com e-commerce website, through which California consumers order and receive weekly Home Chef meal-kit deliveries. Home Chef ships meal kits directly to California consumers from its San Bernardino, California facility and from its other production and distribution centers.

73. Home Chef operates and controls the @realhomechef social media accounts on Instagram, TikTok, and Facebook, each bearing its "Home Chef" trade name. From these accounts, Home Chef has posted at least 11 unauthorized Videos featuring Sony Music Recordings. Each of these Videos was viewable on demand by any consumer with an internet-connected device in California, with almost half remaining viewable as recently as April 29, 2026. Each Video promoted Home Chef's meal-kit delivery service, which is available to and used by California consumers. In addition to its own social media posts, Home Chef engages paid influencers to promote Home Chef to consumers across the United States, including California consumers. On April 8, 2022, an Instagram user posting under the handle @kymjacksonsmith—on information and belief a paid influencer of Home Chef—posted a commercial TikTok Video promoting Home Chef and directing viewers to "Use Kym100 for $100 off your

order," using a Sony Music Recording without license. That Video was tagged "#ad"—the Federal Trade Commission's required disclosure of paid influencer content.

74. **Defendant Kroger Limited Partnership I** (which does business as Ruler Foods) is a limited partnership organized under the laws of Ohio and a subsidiary of the Kroger Co., Kroger Limited Partnership I (d/b/a "Ruler Foods") operates retail grocery stores under the Ruler Foods banner. Ruler Foods operates and controls the corporate social media accounts @rulerfoods and @rulerfoodsofficial on Instagram, TikTok, and Facebook, each bearing its Ruler Foods banner mark. From these accounts, Ruler Foods has posted at least 30 unauthorized Videos featuring Sony Music Recordings. These Videos were, and as recently as May 28, 2026, remained viewable on demand by any consumer with an internet-connected device in California. This Court has personal jurisdiction over Ruler Foods because, among other things, it purposefully avails itself of and targets the California market by directing its social media advertising to consumers nationwide, including California, and because the infringing Videos posted under the Ruler Foods brand were disseminated to and viewed by California consumers as part of the Kroger enterprise's nationwide marketing strategy, from which Sony Music's claims arise.

75. **Defendant Vitacost.com, Inc.** is a corporation organized under the laws of Delaware with its principal place of business formerly located in Boca Raton, Florida. Vitacost.com, Inc. ("Vitacost") sells health and wellness products to consumers in all 50 states, including California, through its e-commerce website. Kroger acquired Vitacost in August 2014, and it was a wholly owned subsidiary of the Kroger Co. during the period in which the infringing Videos were created and posted. At the very least, between 2020 and January 2026, Vitacost operated the @vitacost and @vitacost.com social media accounts on Instagram, TikTok, and YouTube, bearing its "Vitacost" and "Vitacost.com" trade names. From these accounts, Vitacost posted at least 18 unauthorized Videos featuring Sony Music Recordings. These Videos were,

and as of May 26, 2026, a vast majority remained, viewable on demand by any consumer with an internet-connected device in California, with some still viewable as of the filing of this Complaint. Each Video promoted Vitacost's e-commerce business, which, at least during the relevant time period, sold and shipped products directly to California consumers from Vitacost.com.

76. The Kroger Co. directs, controls, and has the right and ability to supervise the social media marketing activities of each of these affiliated entities, including the posting of the infringing Videos.

77. The Kroger Co. exercises this control through its centralized marketing function, KPM, a division of its wholly-owned subsidiary 84.51° LLC, which designs, executes, and approves digital advertising campaigns on behalf of all Kroger banners. KPM's published Guidelines and Spec Sheets require that KPM's Campaign Operations specialists "review creative and provide feedback to request revisions until final creative passes guidelines and has formally been granted creative approval" before an advertisement may run. Through this centralized approval process, the Kroger Co. has actual authority to review, reject, or require modification of all social media content posted by its subsidiaries, including the Kroger Subsidiaries, including content containing unlicensed sound recordings.

78. On information and belief, Kroger's social media advertising strategy is managed in significant part through 84.51° LLC and KPM[13] which runs targeted advertising campaigns across social media platforms—including Instagram, TikTok, Facebook, and YouTube—directed at consumers nationwide, including in California and employs individuals located in California responsible for social media marketing.[14]

---

[13] https://www.8451.com/solutions/kroger-precision-marketing/; https://www.krogerprecisionmarketing.com/.

[14] Indeed, its Senior Media Risk Manager is located in California, and one of his job responsibilities is "social media marketing." *See* https://www.linkedin.com/in/jake-eisenman/.

79. Through KPM, The Kroger Co. centrally directs, coordinates, and controls the creative content, technical specifications, branding, and distribution of advertising across its owned subsidiary banners. KPM's website displays the logos of The Kroger Co.'s subsidiary banners—including Baker's, Dillons, Food 4 Less, Fred Meyer, Fry's, Harris Teeter, King Soopers, Mariano's, Metro Market, Pay Less, Pick 'n Save, and Fry's Food Stores—confirming that KPM provides centralized advertising services to each of these entities.[15]

80. Upon information and belief, multiple of the Kroger Parties' Facebook pages identify the same advertising agency (and subsidiary of the Kroger Co.)—CB&S Advertising Agency, Inc.—as the entity "responsible for" those pages. [16] The use of the same advertising agency across multiple Kroger-affiliated brands is consistent with, and further evidences, the centralized direction, coordination, and control of the Kroger Parties' enterprise-wide social media marketing.

81. As part of the Kroger Parties' centralized advertising efforts, Defendants have, on numerous occasions, coordinated the dissemination of the same infringing Video across the Social Media Pages of two or more Kroger-affiliated brands by either (i) publishing a video collaboration post through Instagram's collaboration feature, causing the Video to appear simultaneously on the official social media accounts of multiple Kroger-affiliated brands and, in various instances, an influencer, or (ii) posting an identical Video across the Social Media Pages of multiple Kroger-affiliated brands.

---

[15] *See id.; see also* https://www.krogerprecisionmarketing.com/client-resources/creative-specs-guidelines/ (displaying Kroger Family of Stores banner logos in site footer, including Baker's, Dillons, Food 4 Less, Fred Meyer, Fry's, Harris Teeter, King Soopers, Mariano's, Metro Market, Pay Less, Pick 'n Save, and Fry's Food Stores).

[16] *See* https://www.facebook.com/myfood4less/about_profile_transparency (identifying that "CB&S ADVERTISING AGENCY, INC. is responsible for this Page."); https://www.facebook.com/Dillons/about_profile_transparency (same); https://www.facebook.com/Kroger/about_profile_transparency (same); https://www.facebook.com/Ralphs/about_profile_transparency (same)

82. For example, on May 7, 2025 @picknsavestores, @marianosmarket, and @mymetromarket collaborated with influencer @mentionables_eats on an Instagram post exploiting KAYTRANADA's "Spit It Out" to promote those Kroger Parties' products.[17] The caption also tags and #hashtags each of the Kroger Parties involved in the collaboration and identifies the post as a "partnership" and "collaboration" between the influencer and the identified Kroger Parties.

83. Similarly, on May 6, 2025 @krogerco, @fredmeyerstores, and @ralphsgrocery collaborated on a post exploiting Run DMC's "Peter Piper" without permission.

84. KPM personnel review and formally approve advertising on the Social Media Pages before it may run.[18]

85. On information and belief, Does 1 through 50 are the Kroger Parties' affiliated entities, ad agencies, marketing agencies, employees of the Kroger Parties and/or their affiliated entities, and/or are otherwise responsible for and proximately caused or are causing the harm and damages alleged in this Complaint.[19]

86. Plaintiffs are presently unaware of the true names and/or the involvement of the defendants sued as Does 1 through 50. Plaintiffs will seek leave to amend this

---

[17] https://www.instagram.com/p/DJXmh4ZuAwr

[18] Kroger Precision Marketing, Guidelines & Spec Sheet: Display Ads, Version 6.0 (https://www.krogerprecisionmarketing.com/wp-content/uploads/2026/01/KPM_Display_Creative_Guidelines_and_Spec_Sheet_June_2025.pdf), at p. 5 2025) ("The Guidelines direct that KPM's Campaign Operations ("CO") specialist "will review creative and provide feedback to request revisions until final creative passes guidelines and has formally been granted creative approval.")

[19] https://openaccess-api.cms-conferences.org/articles/download/978-1-964867-32-8_5; https://juniperpublishers.com/pbsij/PBSIJ.MS.ID.556081.php; https://www.forbes.com/councils/forbesagencycouncil/2023/09/08/boosting-the-creative-journey-how-brands-and-creators-can-use-instagrams-latest-updates/?streamIndex=0; https://newsroom.tiktok.com/helping-brands-unlock-the-power-of-music-and-sound-on-tiktok; https://houseofmarketers.com/viral-tiktok-songs-brand-marketing/

pleading to identify those defendants when their true names and involvement in the infringements and other wrongful conduct hereinafter described become known.

## SONY MUSIC'S BUSINESS

87. Sony Music is home to some of the world's most distinguished record labels, including Columbia Records, RCA Records, Sony Music Nashville, Arista Records, Ultra Records, and Epic Records, through which Sony Music contracts with world-class recording artists.

88. Through substantial investments of money, time, and creative effort, Sony Music and its recording artists have produced some of the most iconic sound recordings of all time, as well as many of today's biggest hits.

89. Sony Music's investments in recorded music are protected by copyright, which grants Sony Music the exclusive rights to, among other things, reproduce, distribute, transmit, and create derivative works of its sound recordings.

90. Sony Music owns copyrights and/or exclusive rights in and to many of the most popular sound recordings in the world, including those identified in Exhibit 1.

91. Each Sony Music Recording is either: a) covered by a valid copyright registration; b) the subject of an application for registration submitted to the Copyright Office in accordance with 17 U.S.C. § 411(a); c) one for which Sony Music has the rights to pursue these claims for sound recordings originating outside of the United States under the Berne Convention; or d) a sound recording fixed before February 15, 1972, and included on a schedule filed with the Copyright Office pursuant to the Orrin G. Hatch-Bob Goodlatte Music Modernization Act.

92. Sony Music regularly licenses its recordings for commercial use, including in social media advertisements.

93. Companies pay substantial sums for such licenses, particularly for digital advertising on YouTube, Instagram, Facebook, TikTok and other similar platforms.

94. Yet with respect to hundreds of advertisements containing Sony Music's Recordings, the Kroger Parties sought neither permission nor license.

## THE KROGER PARTIES' SYSTEMIC INFRINGEMENT ON SOCIAL MEDIA

### A. *The Kroger Parties' Direct Infringement*

95. The Kroger Parties recognize the importance of social media advertising.[20]

96. The Kroger Parties employ numerous personnel whose titles and responsibilities are dedicated specifically to social media.[21]

97. The Kroger Parties also recognize the power of music to enhance the effectiveness of their social media marketing campaigns.[22]

---

[20] Kroger, through its own marketing division, emphasizes that companies must "pivot [their] social advertising" and meet consumers on social media platforms where they spend their time, underscoring its recognition of social media as a critical advertising channel. *See* Social Media Shakeup: Pivot to Kroger's Winning Ad Strategies | Marketing Services & Advertising Solutions - Kroger; Kroger integrates social media into its broader omnichannel marketing strategy, using social platforms alongside other digital channels to drive measurable consumer engagement and sales. *See* Case Study: Kroger Precision Marketing – Proving the Power of Retail Media at Scale – Advertising Week.

[21] By way of example only, and among many others, these include: Emily H., Head of Paid and Organic Social Media, Influencer and Affiliate, Kroger, https://www.linkedin.com/in/emily-h-b2a38b124/; Emmalee Smith, Senior Manager, Paid & Organic Social Media, Affiliate Marketing, Kroger, https://www.linkedin.com/in/emmaleereiser/; Claire Fitzgerald, Paid & Organic Social Media Manager, Kroger, https://www.linkedin.com/in/claire-martin11/; Sarah Berkov, Social Media Manager, Kroger, https://www.linkedin.com/in/sarah-berkov-b1897251/; Lauren Hecker, Social Media Specialist, Kroger, https://www.linkedin.com/in/laurenhecker/; Layla K., Paid and Organic Social Media Manager, Kroger, https://www.linkedin.com/in/layla-k-50a7b886/; and Kim Clark, Social Media Manager | Designer, Fred Meyer Jewelers, https://www.linkedin.com/in/kim-clark-social-specialist/; Amari Walls, Social Media Specialist, Mariano's, https://www.linkedin.com/in/amari-walls-333064b3/; Gabriela V, Digital Marketing, Communications, Brand Strategy & Content Creation, Harris Teeter, .https://www.linkedin.com/in/gabriela-vazquez26/. These individuals are only a select few of the numerous employees Kroger dedicates to operating and managing its social media presence.

[22] https://slipstreammusic.com/case-studies/kroger (Kroger music-licensing partner stating that the Kroger Parties" effectively leverage[ ] music in their advertising and social media campaigns," noting that carefully selected tracks aligned with brand values "enhance the storytelling of their commercials and posts" and make content "more memorable and engaging for viewers across platforms.").

98. Individuals viewing advertisements including music in the background have "higher emotional arousal and attention level" than those who watch the commercial without music.[23]

99. Music makes campaigns more memorable and effective and "keep[s] viewers interested and wanting more."[24]

100. According to a TikTok study, "67% of TikTok users would prefer to see videos from brands featuring popular or trending songs on TikTok."[25]

101. Indeed, TikTok advises brands that "[u]sing a trending song in your brands' TikTok content is a great way to capture [users'] attention."

102. When TikTok limited the amount of popular music available to users in Australia, it saw a marked decrease in users and user engagement.

103. As TikTok states, "music is at the heart of the TikTok experience" and is "the glue that connects TikTok's disparate threads."[26]

104. It is no accident that the Videos use some of the most popular sound recordings in Sony Music's catalog, including chart-topping hits such as "Hey Ya!" by Outkast (exploited at least twelve times), "Golden" by Harry Styles (exploited at least four times), "Lovely Day" by Bill Withers (exploited at least seven times), and "All I Want For Christmas Is You" by Mariah Carey (exploited at least twelve times).

---

[23] https://today.tamu.edu/2021/08/16/how-background-music-in-ads-affects-consumers/

[24] https://www.forbes.com/sites/forbesagencycouncil/2023/09/08/boosting-the-creative-journey-how-brands-and-creators-can-use-instagrams-latest-updates/?sh=3332f93444e8

[25] https://newsroom.tiktok.com/en-us/new-studies-quantify-tiktoks-growing-impact-on-culture-and-music (although this statement and the following specifically discuss TikTok the principles and concepts equally apply to other social media platforms)

[26] *Id.*; https://www.bloomberg.com/news/articles/2023-03-22/tiktok-lost-customers-when-it-took-away-music-in-australia?sref=Adr3lZQP; https://Newsroom.tiktok.com/en-us/year-on-tiktok-music-report-2021

105. But there is a problem with the Kroger Parties' approach: they regularly post advertisements on the Social Media Pages containing unlicensed sound recordings owned or controlled by Sony Music and others.

106. The use of popular and trending music in the Videos is critical to the Kroger Parties' social media advertising's reach and penetration, in part because algorithm-driven platforms like Instagram and TikTok amplify posts that incorporate popular sound recordings and music-related tags and hashtags.[27]

107. Adding popular sound recordings to a post also causes Videos to appear in the feeds of users who are interested in the *music* and might not otherwise come across the Videos.[28]

108. Including popular sound recordings in Videos leads users to discover posts when searching on the platform for content relating to certain artists, songs, or music-related tags.

109. The Kroger Parties are fully aware that the Videos contain popular sound recordings that it did not license.

110. The Kroger Parties are also aware that a license is required to exploit copyrighted sound recordings on social media.

111. Indeed, the Kroger Co. previously entered into several licensing agreements with Sony Music authorizing such uses.

112. The Kroger Parties' selection of Sony Music Recordings for use in the Videos is deliberate and meant to enhance the Videos' commercial appeal.

---

[27] https://www.precisionsocial.com/blog/why-you-should-use-trending-music-in-your-posts ("Social media platforms like TikTok and Instagram prioritize content that uses trending sounds and music. When you use these popular tracks, your posts are more likely to be featured on the Explore page or For You feed, increasing your visibility to a broader audience."); *see also supra*, note 6.

[28] *Id.*

113. The Kroger Parties actively promote Sony Music Recordings as part of the Videos, including by tagging the song and/or explicitly referencing the Sony Music Recording or artist in the Video's caption.

114. As shown in **Figure 1** below, on June 7, 2023, the @krogerdfw Instagram account posted a Video exploiting Harry Styles' "Watermelon Sugar" to promote a watermelon-themed in-store event called the "Watermelon Freshtival." The Video tags the Sony Music Recording—identifying "Watermelon Sugar" by Harry Styles as the audio accompanying the post—and pairs it with a caption promoting Kroger's watermelon products.[29]

**Figure 1**




[29] *See* https://www.instagram.com/p/CtM_xN7sItu

115. The Kroger Parties also deliberately select sound recordings, including Sony Music Recordings, that are relevant to the products, promotions, or events featured in their Videos.

116. As shown in **Figure 2** below, on November 29, 2024, the @kroger TikTok account posted a Video exploiting Mariah Carey's "All I Want for Christmas Is You" to promote holiday cocktail recipes, with a caption that references the song's iconic association with the holiday season and including lyrics from the recording in the caption. In doing so, the Kroger Co. deliberately leveraged the Sony Music Recording's cultural cachet to drive engagement with its seasonal advertising.[30]

[30] *See* https://www.tiktok.com/@kroger/video/7442784862970449194

**Figure 2**




117. As shown in **Figure 3** below, a Video posted on June 14, 2023 to the Instagram channel for one of the Kroger Co.'s brands, 84.51, exploited the famous sound recording "Sweet Dreams (Are Made of This)" by Eurythmics to promote a corporate event recap, with a caption that directly references the Sony Music Recording's lyrics: "Sweet dreams are made of this ✨💭 Check out the recap of our spring Area 51 virtual gathering at the link in bio!"[31]

[31] https://www.instagram.com/p/CtenR_OroS1

**Figure 3**




118. The Kroger Parties also strategically post advertisements incorporating Sony Music Recordings shortly after their release dates and/or when they are most popular.

119. For example, the Kroger Co. subsidiary, Mariano's posted a Video to its Instagram account (@marianosmarket) on January 21, 2023, exploiting Miley Cyrus' "Flowers" just nine days after the track was released and during the week it debuted at No. 1 on the Billboard Hot 100.

120. Similarly, on August 31, 2022, Mariano's posted a Video to the @marianosmarket Instagram account exploiting Harry Styles' "Music For a Sushi Restaurant" seven days after the single's release.

121. Mariano's also posted Videos exploiting Doja Cat's "Paint The Town Red" to the @marianosmarket account on September 28, 2023, while the track was No. 1 on the Billboard Hot 100.

122. Likewise, on March 1, 2024, the Kroger Co. subsidiary, Murray's Cheese, posted a Video to the @murrayscheesebar Instagram account exploiting Beyoncé's "TEXAS HOLD 'EM" less than three weeks after the track's release and just days after it hit No. 1 on Billboard's Hot 100.

123. Multiple Kroger Parties made at least twelve uses of "All I Want for Christmas Is You" by Mariah Carey in late November or December, when the track is most in-demand, across at least six different accounts including @kroger, @marianosmarket, @murrayscheese, @rulerfoods, @fredmeyerjewelers, and @vitacost.

124. The Kroger Parties similarly exploited "Underneath the Tree" by Kelly Clarkson, "Sleigh Ride" by The Ronettes, and "Last Christmas" by Wham! repeatedly during the holiday season.

125. For example, pictured in **Figure 4** below, on December 12, 2025, the @murrayscheese TikTok account posted a Video exploiting Wham!'s "Last Christmas" to promote Murray's Cheese's holiday gift boxes.[32]

[32] https://www.tiktok.com/@murrayscheese/video/7583080626304142623

**Figure 4**




126. Similarly, various Kroger Parties exploited "It's the Most Wonderful Time of the Year" by Andy Williams at least seven times during the holiday seasons between 2022 and 2025, across accounts including @krogerdfw, @rulerfoods, @marianosmarket, @murrayscheese, and @fredmeyerjewelers—in each instance tying the iconic holiday recording to advertisements for holiday products and seasonal deals.

127. The Kroger Parties' selection of the Sony Music Recordings is calculated: The Kroger Parties choose specific recordings because of their cultural and seasonal associations and use those associations to sell products.

128. These are precisely the types of uses for which Sony Music charges a license fee.

129. When posting the Videos to the Social Media Pages, the Kroger Parties make an unauthorized copy of the Sony Music Recordings.

130. In the Videos, Sony Music Recordings are duplicated and synchronized with visual content without permission, creating an unauthorized derivative work.

131. The Kroger Parties distribute the Videos through the Social Media Pages.

132. Upon publication of each post—whether as a permanent post or one available for a limited time, such as Instagram Stories—the Kroger Parties distributed copies of the Sony Music Recordings to members of the public by causing the platforms to deliver and transmit copies of those works to users who accessed, viewed, streamed, cached, downloaded, and/or shared the posts.

133. The Kroger Parties publicly perform the Sony Music Recordings via digital audio transmission when they post the Videos on the Social Media Pages, and users stream those Videos.

**B. *The Kroger Parties' Influencer Marketing***

134. The Kroger Parties' infringement extends beyond content posted to its own accounts.

135. Upon information and belief, the Kroger Parties also engage paid influencers and content creators to create and post advertisements promoting the various Kroger Parties' brands and products, and those advertisements likewise incorporate the Sony Music Recordings without authorization.

136. Upon information and belief, the influencers who created the Videos utilizing the Sony Music Recordings without permission received free products, cash

payments, discounts and/or a share in the Kroger Parties' sales generated from the infringing content in return for their creation of such infringing videos.

137. For example, as pictured in **Figure 5,** below, on April 8, 2022, the TikTok account @kymjacksonsmith posted a Video exploiting Doja Cat's "Get Into It (Yuh)"—a Sony Music Recording—to promote the Kroger Co.'s Home Chef meal-kit brand.

138. The caption indicates that the Video was a paid advertisement through the use of "#ad," and the branded promotional hashtag "#hookedonhomechef".

139. The caption also tags the Kroger Co.'s @realhomechef account and provides viewers a discount code—instructing them to "Use Kym100 for $100 off your order".

140. The Kroger Co. received a direct commercial benefit from the post in the form of orders placed using the code.

141. Upon information and belief, the Kroger Co. provided the products, direction, and/or the discount code featured in the Video, and authorized, directed, and financially benefited from its creation and publication.[33]

[33] https://www.tiktok.com/@kymjacksonsmith/video/7084262929746464043

**Figure 5**




142. As evidenced in **Figure 6** below, the Kroger Co. regularly collaborates with influencers on Instagram, promoting the Kroger Co.'s products. This Video identifies @krogerdfw as a collaborator, demonstrating that the Kroger Co. knowingly participated in the creation and dissemination of the promotional content through Instagram's collaboration feature. As a result, the post appeared on both @krogerdfw's official Instagram page and the influencer's Instagram page, extending its reach to both audiences.

143. By collaborating on the post, the Kroger Co. affirmatively endorsed and promoted the influencer's content as part of its own social media marketing efforts further demonstrating that the Kroger Parties actively engaged influencers as part of their social media advertising strategy and knowingly participated in the creation,

publication, and dissemination of influencer-generated content promoting their stores and products.

**Figure 6**




144. Upon information and belief, there are many more infringing videos created by Kroger's influencers, but many of those influencers do not disclose that they are being compensated by Kroger for the advertisement, contrary to FTC guidelines.

145. Upon information and belief, the Kroger Parties and their affiliated brands maintain formal affiliate and influencer programs through which the Kroger Parties recruit influencers, approve, set content guidelines for influencer content, and supply influencers with tracking links and promotional discount codes.

146. For example, the Kroger Co.'s Home Chef brand operates an Affiliate Program that publicly invites "partners to influence and earn attractive commissions from the growth of [its] service."[34]

147. The Kroger Parties also maintain a broader affiliate program through which bloggers, influencers, and content creators earn commissions by promoting their products via tracked links, with published content guidelines that affiliates must follow.[35]

148. Upon information and belief, the Kroger Parties compensate these influencers for creating and posting social media advertisements on the influencer's social media accounts promoting the Kroger Parties' products, including advertisements that incorporate the Sony Music Recordings, through direct payments, free products, commissions and/or other forms of consideration.

149. This belief is based on, among other things, the publicly available terms of the Kroger Parties' affiliate and influencer programs described in this section, including the Home Chef Affiliate Program and the Fred Meyer Jewelers Affiliate Program, both of which confirm that Kroger Parties' recruit, compensate, and impose content requirements on influencers who promote the Kroger Parties' products, including through the Videos.

150. The Kroger Co.'s Home Chef brand confirms that its promotions are distributed through "partnered influencers" and that it pays a commission "for every new customer who orders."[36]

---

[34] *See* https://www.homechef.com/affiliates; *see also* https://support.homechef.com/hc/en-us/articles/43869828583821;. (Home Chef's own support pages confirm that its sign-up promotions are distributed through "Home Chef affiliates, partnered influencers, or promotional campaigns.")

[35] *See* https://www.creator-hero.com/blog/kroger-affiliate-program-in-depth-review-pros-and-cons.

[36] *See* https://support.homechef.com/hc/en-us/articles/208561916-How-does-the-Home-Chef-referral-program-work.Chef's Affiliate Program

151. Fred Meyer Jewelers also operates its own Affiliate Program, which invites partners to "share the products you love" and earn commissions on sales generated through affiliate links, with an average commission of $25 per sale, and provides a dedicated affiliate manager.[37]

152. The Fred Meyer Jewelers Affiliate Program's published terms require affiliates to "adhere to Fred Meyer Jewelers brand guidelines" and use "only official product names, taglines and brand names with proper formatting in all affiliate promotional messaging," and Fred Meyer Jewelers expressly "reserves the right to require the affiliate to edit or remove promotional messaging (within 24 hours of notice) if the messaging is deemed by Fred Meyer Jewelers to be misleading."[38]

153. Upon information and belief, the Kroger Parties retain the right and ability to review, approve, direct, and/or require removal of the Videos posted by their influencers.

154. There is nothing stopping the Kroger Parties from placing conditions on provision of commissions or other consideration to influencers, such as compliance with copyright laws, or from penalizing influencers or terminating relationships with influencers who infringe.

155. Instagram's collaboration feature, which the Kroger Parties regularly use with influencers, requires the Kroger Party to affirmatively approve each collaboration post before it appears on the Kroger Party's official account, demonstrating that the Kroger Parties actually review and approve influencer content—including its audio component—before publication and dissemination.

---

[37] *See* https://www.fredmeyerjewelers.com/affiliate-program.

[38] *See* https://www.fredmeyerjewelers.com/affiliate_terms.

156. The Kroger Parties' social media and influencer campaigns are "managed and executed by" Kroger's "in-house team of experts".[39]

157. The Kroger Parties employ personnel dedicated to social media management and social and influencer campaigns on an enterprise-wide basis.[40]

158. These influencers also tag the Kroger Parties' corporate social media accounts in their posts, providing the Kroger Parties with notice of the content because the relevant social media platform notifies an account whenever it is tagged.

159. And, in many instances, the Kroger Parties' conduct goes beyond merely being tagged and instead they collaborate directly with influencers through Instagram's collaboration feature, causing the posts to appear simultaneously on both the influencer's account and the Kroger Parties' account. These collaborations further demonstrate the Kroger Parties' knowledge of, approval of, and active participation in the creation, publication, and dissemination of influencer-generated promotional content.

160. The Kroger Parties maintain the right and ability to control their influencers' infringement even aside from any formal contract, as there is nothing stopping the Kroger Parties from placing conditions on provision of commissions or other consideration to influencers, such as compliance with copyright laws, or from penalizing influencers or terminating relationships with influencers who infringe.

---

[39] See Marketing Services and Advertising Solutions - Kroger Precision Marketing, https://www.krogerprecisionmarketing.com/.

[40] *See, e.g.*, Emmalee Smith, Sr. Manager, Paid & Organic Social Media, Affiliate Marketing, Kroger, LinkedIn (describing prior role as Social Media Manager in which she "[l]ed high-profile enterprise campaigns serving as the operational lead across departments" and "[b]uilt and managed cross-functional teams, strengthening collaboration between brand, merchandising, health verticals, internal and external creative and media agencies"), https://www.linkedin.com/in/emmaleereiser/.; Casey Smith, Social Media Manager, LinkedIn (describing prior role leading "social media, influencer marketing and publisher strategy for the Kroger Family of Stores, including 13+ divisions"); https://www.linkedin.com/in/caseynsmith1/.

161. The Kroger Parties derive a direct financial benefit from the infringing content posted by its influencers, which increases brand awareness, product sales, and customer engagement and enhances the visibility of the Kroger Parties' products and brands, including through driving users that would not otherwise view the Kroger Parties' social media content to their accounts.

162. Upon information and belief, the Kroger Parties also engage advertising agencies and marketing agencies to create and/or post some or all of the Videos posted on their own Social Media Pages.

163. Upon information and belief, CB&S Advertising Agency, Inc**.** – a subsidiary of the Kroger Co. – is among one of the many advertising agencies retained by one or more of the Kroger Parties to assist with the administration, operation of and advertising and social media marketing on the Kroger Parties' Social Media Pages.

164. Publicly available Facebook Page Transparency disclosures identify CB&S Advertising Agency, Inc. as the entity "responsible for this Page" for multiple Kroger-affiliated Facebook pages, including the Facebook pages associated with Kroger, Dillons, Ralphs, and Food 4 Less. Those disclosures further indicate that the Facebook pages associated with Kroger, Dillons, and Ralphs were actively running advertisements. These disclosures are consistent with CB&S Advertising Agency, Inc.'s role in administering and coordinating advertising and promotional activity for multiple Kroger-affiliated social media accounts.

165. Upon information and belief, the Kroger Parties compensate these advertising and marketing agencies through direct payments and/or other forms of consideration.

166. Upon information and belief, the Kroger Parties also collaborate with other third parties to promote their products and brands and compensate these third parties through direct payments and/or other forms of consideration.

167. The Kroger Parties have the right, ability, and authority to control and supervise the creation and dissemination of the Videos, including the ability to direct which content is posted to their Social Media Pages, to review content before it is posted, and to take down infringing content. As evidenced by Home Chef's and Fred Meyer Jewelers' published affiliate program terms and KPM's Guidelines and Spec Sheets, the Kroger Parties routinely exercise this authority by requiring pre-publication review, imposing brand guidelines, and reserving the contractual right to require removal of non-compliant content within 24 hours of notice.

168. The Kroger Parties derive a direct financial benefit from the infringing content created and/or posted by the advertising agencies, including the Videos, which increases brand awareness, product sales, and customer engagement, and enhances the visibility of the Kroger Parties' products and brands, including through driving users that would not otherwise view the Kroger Parties' social media content to their accounts.

169. The Kroger Parties encourage, induce, cause, and materially contribute to third-party infringement by: (a) directing the creation of the Videos, including providing detailed content guidelines, branding requirements, and creative specifications that influencers and other third parties must follow; (b) incentivizing the use of popular and trending music through commission-based compensation structures that reward viral content and high engagement; (c) providing the products, promotional codes, and subject matter featured in the Videos; (d) requiring influencers and other third parties to tag and collaborate with the Kroger Parties' corporate accounts and use branded hashtags, thereby associating the infringing content with the Kroger Parties and their brands; and (e) causing the Videos to be posted on the Social Media Pages or distributed through the Kroger Parties' influencer's and other third parties' networks.

170. The Kroger Parties' affiliate programs, including the Home Chef Affiliate Program and the Fred Meyer Jewelers Affiliate Program, compensate influencers based

on customer conversions, creating a direct incentive for influencers to use popular sound recordings that maximize engagement and drive sales.

171. The Kroger Parties reviewed and approved any Videos created by influencers, including the use of the infringing sound recordings in the Videos.

172. For example, when the Kroger Parties collaborated with influencers through Instagram's collaboration feature, they necessarily reviewed and approved the complete post—including the infringing sound recordings—before causing the post to appear on their official accounts.

173. Upon information and belief, the Kroger Parties' brand guidelines, content requirements, and pre-publication approval process gave them actual knowledge of, and authority over, the musical content of influencer videos.

174. The Fred Meyer Jewelers Affiliate Program terms confirm this supervisory authority, requiring affiliates to "adhere to Fred Meyer Jewelers brand guidelines" and use "only official product names, taglines and brand names with proper formatting," and providing that Fred Meyer Jewelers "reserves the right to require the affiliate to edit or remove promotional messaging (within 24 hours of notice)."

175. Upon information and belief, the other Kroger Parties maintain similar content guidelines and have similar removal rights.

176. Through these content guidelines and removal rights, the Kroger Parties exercise actual control over influencer content and have the ability to prevent the posting of Videos containing unlicensed sound recordings.

177. The Kroger Parties also suggest and encourage the use of popular and trending sound recordings, including the Sony Music Recordings, by emphasizing engagement metrics and viral reach in their influencer communications and by rewarding high-engagement content through commission-based compensation.

**DAMAGE TO SONY MUSIC**

178. The Kroger Parties' infringements rob Sony Music of the substantial licensing revenues it is entitled to for use of the Sony Music Recordings.

179. The Kroger Parties' infringements undermine Sony Music's investments in its artists and recordings, and deprive those artists of revenue.

180. In addition to the license fees Sony Music should have received from the Kroger Parties, other potential licensees may be less likely to use a Sony Music Recording that was used by another brand.

181. The unauthorized use of Sony Music's sound recordings substantially interferes with its and its artists' right to determine whether to license use of a particular sound recording at all, and their right to decide what brands should be able to use their music to promote its products or services.

182. The Kroger Parties' infringing conduct also induces other businesses to believe that they can use Sony Music's sound recordings in advertisements without paying for the right to do so.

183. The Kroger Parties have caused Sony Music irreparable harm, and damages in an amount to be determined at trial.

**THE KROGER PARTIES' INFRINGEMENT IS WILLFUL**

184. The Kroger Parties' infringement is knowing and willful.

185. At the time the Kroger Parties made and/or posted the Videos, they were aware of the requirements of the United States Copyright Act and the need to obtain licenses from Sony Music before using any of the Sony Music Recordings. The Kroger Parties are sophisticated commercial entities with in-house legal counsel and dedicated marketing personnel responsible for copyright compliance in advertising. The Kroger

Co. employs personnel with specific expertise in social media advertising and intellectual property compliance.[41]

186. The Kroger Co. was also aware that it needed to obtain a license to utilize commercial music, including the Sony Music Recordings, in its social media advertising.

187. Indeed, the Kroger Co. previously entered into at least fourteen licenses with Sony Music from as early as 2017 and as recently as 2025 for the use of Sony Music Recordings in its advertisements, including for use on the internet and social media.

188. One of those licenses was a limited 7-week license authorizing the use of The Lovin' Spoonful's "Do You Believe in Magic?" in Kroger's 2020 holiday campaign, including on television, radio, the internet, and social media, from November 13, 2020 to December 31, 2020. That license did not authorize any reproduction, distribution, synchronization, public performance, or other exploitation of the recording after December 31, 2020. Nevertheless, after the license expired, seven Kroger-affiliated brands kept campaign Videos embodying that Sony Music Recording publicly available and viewable on demand, including each posting its own brand-specific version using Kroger-affiliated logos, branded content, and taglines to the social media accounts for City Market, Baker's, Dillons, King Soopers, Fry's Food Stores, Pick 'n Save, and Ralphs. Upon information and belief, as of the filing of this Complaint, Ralphs and Dillons have continued to make such Videos available.[42]

189. Because the Kroger Co. and 84.51° LLC, through KPM, centrally review and approve the social media advertising content posted by each affiliated-entity

---

[41] *See*, e.g., Steve Rubin, Privacy, Data, Cybersecurity, AI, and Intellectual Property Counsel, Kroger, LinkedIn, https://www.linkedin.com/in/stevensrubin; Nathan Brown, Senior Attorney, Kroger, LinkedIn, https://www.linkedin.com/in/nathan-brown-b76a9345/. See supra nn.21, 39.

[42] https://www.facebook.com/reel/163781475453557 and https://www.facebook.com/reel/2906104766291654

Defendant, and because Kroger Co.'s subsidiary CB&S Advertising Agency, Inc. controls several of the brands' Facebook pages, Sony Music's June 30, 2025 notice to the Kroger Co. and its subsequent notices are properly imputed to each affiliated-entity Defendant for purposes of establishing that Defendant's own knowledge and willfulness.

190. The Kroger Parties' prior licensing agreements with Sony Music demonstrate that they had actual knowledge that licenses are required for commercial use of Sony Music Recordings on social media. Having previously negotiated and paid for such licenses, the Kroger Parties cannot claim ignorance of the licensing requirement. The Kroger Parties' decision to use hundreds of Sony Music Recordings without obtaining licenses—despite prior licensing history and knowledge of the legal requirements—constitutes willful infringement.

191. Kroger's own public filings further confirm that it is willing and able to spend substantial sums on advertising when it chooses to do so. Kroger disclosed that its advertising costs totaled approximately $1.18 billion in 2025. Yet despite that substantial advertising spend, and despite its extensive licensing history with Sony Music, Kroger chose not to obtain the required licenses for hundreds of commercial social media advertisements that used Sony Music Recordings. Kroger's decision to devote substantial resources to advertising while refusing to pay for the sound recordings that made those advertisements more engaging further confirms that the Kroger Parties' infringement was knowing and willful.[43]

192. Further indicating the Kroger Parties' willfulness, the terms of service of each of the social media platforms used by the Kroger Parties make clear to users that the use of copyrighted music on these platforms is for personal, noncommercial use

[43] The Kroger Co., Annual Report (Form 10-K) for the fiscal year ended Jan. 31, 2026, at [https://s202.q4cdn.com/463742399/files/doc_downloads/2026/04/7b99445c-4ee6-4439-a8b3-45165487d1e0.pdf] (filed Mar. 31, 2026).

only. Any use of copyrighted music for any other purpose without a license is strictly prohibited.

193. TikTok's Intellectual Property Policy expressly prohibits "posting, sharing, or sending any content that violates or infringes someone else's copyrights" and its Terms of Service further state, in all caps: "NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE."[44]

194. TikTok's Terms of Service also direct users to the Music Terms and Commercial Music Library Terms and state that "these terms apply if you are a commercial entity or you want to post content on the Platform that includes music sourced from the Commercial Music Library."[45] The Music Terms make clear that unlike the general music library – where SME sound recordings can be found— "Commercial Sounds are made available to brands, businesses, commercial entities, advertisers or other Platform users (including individuals) that may be using the Platform for commercial purposes…. Music recordings selected from the Commercial Music Library can be used to promote a brand or for other commercial purposes."[46]

195. Facebook's Terms of Service, which also apply to Instagram, cautions users that they "may not use [their] Products to do or share anything … that infringes or violates someone else's rights, including their intellectual property rights."[47]

---

[44] https://www.tiktok.com/legal/page/global/copyright-policy/en; https://www.tiktok.com/legal/page/us/terms-of-service/en

[45] https://www.tiktok.com/legal/page/us/terms-of-service/en

[46] https://www.tiktok.com/legal/page/global/music-terms-us/en

[47] https://www.facebook.com/terms/

196. Facebook's Music Guidelines, which are also incorporated into Instagram's Terms of Use, state that "[u]se of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses." [48]

197. At least as early as April 2018, Instagram's Terms of Use incorporated Music Guidelines found on Facebook's website which specifically prohibit the commercial use of music without an appropriate license.[49] Nonetheless, all the Videos in Exhibit 1 posted to both Instagram and Facebook were posted *after* April 2018, in disregard for the platforms' terms of use.

198. Instagram expressly states that access to its licensed music library is subject to its agreements with rights holders which are "intended to protect artists, songwriters, and their works" and further states that "the music available in our library is intended for personal, non-commercial uses."[50]

199. For commercial uses, Instagram provides access to a separate Sound Collection through Facebook, "which are entirely royalty free and safe to use in Reels and Instagram Stories" and states that "[t]he content in Sound Collection can be used for commercial purposes like ads."[51]

200. The Kroger Parties agreed to these social media platforms' terms of use. On information and belief, the Kroger Parties also received direct notice from the platforms that its conduct infringed on the copyrights of third parties.

201. As seen in **Figures 7 and 8** below, in addition to its Terms of Service, TikTok additionally reminds business accounts that use of copyrighted music requires appropriate permissions at the time of posting. When a business account attempts to post a video on TikTok using audio outside of the Commercial Music Library, it must

---

[48] https://www.facebook.com/legal/music_guidelines

[49] https://help.instagram.com/581066165581870

[50] https://help.instagram.com/402084904469945

[51] https://m.facebook.com/help/instagram/402084904469945?dl_redirect=1&wtsid=rdr_0iILhouiviKP3oagi

affirmatively indicate that it "accept[s] the Music Usage Confirmation." This is a confirmation that "(A) you own all of the rights to the music included in this video; (B) the music is in the public domain; or (C) you have permission from all necessary rights holders to use the music on the TikTok platform." It further states, "[i]f you cannot confirm (A) or (B) or (C), any music included in this video will be muted."[52]

**Figure 7**




**Figure 8**




202. Even after learning of Sony Music's claims, the Kroger Parties continued to engage in infringing conduct.

203. The Kroger Parties posted new infringing videos and continue to make infringing videos—including Videos Sony Music had specifically identified to the Kroger Co.—available on the Social Media Pages as of the date of this Complaint, over a year after Sony Music first put the Kroger Parties on notice of its claims.

## COUNT I: DIRECT COPYRIGHT INFRINGEMENT

(as to all Defendants)

204. Sony Music incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

[52] https://www.tiktok.com/legal/page/global/music-terms-us/en; https://www.tiktok.com/legal/page/global/music-usage-confirmation/en

205. Sound recordings owned and/or controlled by Sony Music, including but not limited to the Sony Music Recordings in Exhibit 1, are original, creative works and constitute copyrightable subject matter under the Copyright Act.

206. Sony Music owned and/or controlled the copyrights to each of the Sony Music Recordings during the relevant times of the Kroger Parties' infringement.

207. Each of the Kroger Parties are responsible for the Videos posted to their respective social media pages.

208. As discussed above, upon information and belief, the Kroger Co. is responsible for the Videos posted to the @kroger, @krogerco, @krogerdfw, and @privateselection social media accounts.

209. As discussed above, 84.51° LLC is responsible for the Videos posted to the @84.51 Instagram account and, upon information and belief, participates in the creation of the advertising posted to the Social Media Pages, including the Videos.

210. As discussed above, Fred Meyer Stores is responsible for the Videos posted to the @fredmeyerstores Instagram account.

211. As discussed above, Fred Meyer Jewelers is responsible for the Videos posted to the @fredmeyerjewelers, @fredmeyersjewelers, and @fmj_fredmeyerjewelers social media accounts.

212. As discussed above, upon information and belief, Roundy's, Inc. participates in the operation of the @marianosmarket, @officialmarianos, @marianos @mymetromarket, @metromarket, @picknsavestores, and @pick'nsave social media accounts.

213. As discussed above, Roundy's Illinois, LLC is responsible for the Videos posted to the @marianosmarket, @officialmarianos, @marianos social media accounts.

214. As discussed above, upon information and belief, Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, and Ultimate Mart, LLC are jointly or individually

responsible for the @mymetromarket, @metromarket, @picknsavestores, and @pick'nsave social media accounts and the Videos posted on those accounts.

215. As discussed above, Murray's Cheese LLC is responsible for the Videos posted to the @murrayscheese social media accounts and the @murraysmac Instagram account.

216. As discussed above, Murray's Cheese LIC LLC is responsible for the Videos posted to the @murrayscheesebar Instagram account.

217. As discussed above, Harris Teeter is responsible for the Videos posted to the @harristeeter Instagram account.

218. As discussed above, upon information and belief, Dillon Companies, LLC is responsible for the Videos posted to the @dillons, @kingsoopers, @citymarket and @bakers social media accounts.

219. As discussed above, upon information and belief, Smith's Food & Drug Centers, Inc. is responsible for the Videos posted to the @fryfoodstore YouTube channel.

220. As discussed above, Ralphs Grocery Company is responsible for the Videos posted to the @ralphsgrocery Instagram account.

221. As discussed above, Relish Labs LLC is responsible for the Videos posted to the @realhomechef social media accounts.

222. As discussed above, Kroger Limited Partnership I is responsible for the Videos posted to the @rulerfoods and @rulerfoodsofficial social media accounts.

223. As discussed above, Vitacost.com, Inc. is responsible for the Videos posted to the @vitacost and @vitacost.com social media accounts.

224. By their actions, the Kroger Parties' creation, posting, and distribution of the Videos on their respective social media pages infringes Sony Music's copyrights. When a Kroger Party posted each Video to social media, it reproduced the Sony Music Recordings by copying them onto platform servers; prepared derivative works by

synchronizing the Sony Music Recordings with visual advertising content; distributed copies of the Sony Music Recordings to members of the public who downloaded and shared the Videos; and publicly performed the Sony Music Recordings via digital audio transmission.

225. Through these unauthorized uses, the Kroger Parties have unlawfully reproduced the Sony Music Recordings listed in Exhibit 1 in violation of 17 U.S.C. § 106(1); prepared derivative works by synchronizing the Sony Music Recordings listed in Exhibit 1 with visual content in violation of 17 U.S.C. § 106(2); distributed copies of the Sony Music Recordings listed in Exhibit 1 to the public in violation of 17 U.S.C. § 106(3); and, to the extent applicable to the audiovisual streaming of the Videos, publicly performed the Sony Music Recordings listed in Exhibit 1 via digital audio transmission in violation of 17 U.S.C. § 106(6)—all without any authorization, permission, license, or consent from Sony Music.

226. The Kroger Parties' acts of infringement are knowing, deliberate, and in complete disregard for Sony Music's rights.

227. The Kroger Parties' conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

228. As a direct and proximate result of the Kroger Parties' infringement of Sony Music's copyrights and exclusive rights under copyright, Sony Music is entitled to its actual damages, including each Kroger Party's profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Sony Music's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

229. Sony Music is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**COUNT II: VICARIOUS INFRINGEMENT**

(as to The Kroger Co.)

230. Sony Music incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

231. As described above, the Kroger Subsidiaries posted infringing Videos to the Subsidiary Social Media Pages.

232. Through these unauthorized uses, the Kroger Subsidiaries have unlawfully reproduced, prepared derivative works from, publicly performed the Sony Music Recordings via digital audio transmission, and/or distributed the Sony Music Recordings listed in Exhibit 1 in violation of at least 17 U.S.C. § 106(1), (2), (3), and (6), without any authorization, permission, license, or consent from Sony Music.

233. The Kroger Co. is vicariously liable for the infringing acts of the Kroger Subsidiaries.

234. As described above, the Kroger Co. has the right, ability, and authority to control and supervise the creation, posting, and dissemination of videos, including the Videos, posted by the Kroger Subsidiaries on the Subsidiary Social Media Pages through directing the creative process, including through the approval of content before posting and ability to require removal of any infringing content.

235. This authority is further evidenced by the coordinated marketing effectuated by KPM and CB&S Advertising Agency, Inc., including KPM's mandatory creative approval process, which requires Campaign Operations specialists to review and formally approve all advertising content before publication.

236. The Kroger Co. failed to exercise its right and ability to control and supervise the infringing activity on the Subsidiary Social Media Pages.

237. As described above, the Kroger Co. failed to exercise its right and ability to require the take down of the infringing Videos, despite knowledge of the infringement.

238. The Kroger Co. receives a direct financial benefit from the inclusion of Sony Music's recordings in the Videos, as well as from the duplication, public performance via digital audio transmission, and/or distribution of Sony Music's recordings contained in the Videos.

239. The Kroger Subsidiaries' exploitation of the Sony Music Recordings in the infringing Videos increases sales, enhances the visibility of each of the Kroger Subsidiaries' brands and their products, and drives users that would not otherwise view the Social Media Pages to the accounts and pages that promote the Kroger Subsidiaries' brands, stores, and products.

240. Sony Music has been damaged, and will continue to be damaged, by Kroger's knowing, deliberate, and willful acts of vicarious infringement.

241. Sony Music is entitled to injunctive relief prohibiting the Kroger Co. from further acts of vicarious infringement.

242. As a direct and proximate result of the Kroger Co.'s vicarious infringement of Sony Music's copyrights and exclusive rights under copyright, Sony Music is entitled to its actual damages, including the Kroger Co.'s profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Sony Music's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

243. Sony Music is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**COUNT III: CONTRIBUTORY INFRINGEMENT**

(as to The Kroger Co.)

244. Sony Music incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

245. As described above, the Kroger Subsidiaries posted infringing Videos to the Subsidiary Social Media Pages directly infringing on SME's copyrights in the Sony Music Recordings.

246. Through these unauthorized uses, the Kroger Subsidiaries have unlawfully reproduced, prepared derivative works from, publicly performed via digital audio transmission, and/or distributed the Sony Music Recordings listed in Exhibit 1, in violation of at least 17 U.S.C. § 106(1), (2), (3), and (6), without any authorization, permission, license, or consent from Sony Music.

247. The Kroger Co. is contributorily liable for the infringing Videos posted and/or created by the Kroger Subsidiaries on the Subsidiary Social Media Pages.

248. Through KPM and CB&S Advertising Agency, Inc., Kroger Co. controls the marketing of its subsidiaries and directly shapes the creative choices made by its subsidiaries, including the Kroger Subsidiaries. Upon information and belief, KPM and CB&S Advertising Agency, Inc. coordinate social media campaigns for the Kroger Co.'s subsidiaries, including the Kroger Subsidiaries, by providing campaign objectives, promotional themes, and other creative direction, and the nature and focus of those campaigns—which often capitalize on social media trends driven by the use of trending sound recordings—inform and influence the selection and use of the copyrighted sound recordings incorporated into its subsidiaries' videos, including the Videos.

249. As described above, the Kroger Subsidiaries participate in collaborative social media campaigns in which two or more Kroger Subsidiaries—and, in many instances, an influencer—collaborate on a single promotional Video. Through these collaborations, the same promotional Video is published simultaneously on the official social media accounts of each participating Kroger Subsidiary and, where applicable, the influencer's social media account. In addition, Kroger Subsidiaries post the same promotional Videos across other Subsidiary Social Media Pages, further disseminating

the same infringing content across multiple Kroger-owned social media accounts. These collaborative campaigns and cross-brand reposting practices further evidence the centralized direction, coordination, and oversight of social media marketing across the Kroger Co.'s family of brands. Also as described above, multiple Kroger Parties post identical Videos to their respective social media pages.

250. Through the foregoing acts, among others, the Kroger Co. actively encourages and induces the infringing reproduction, preparation of derivative works from, distribution, and/or public performance via digital audio transmission of the Sony Music Recordings contained in the Videos posted by the Kroger Subsidiaries to the Subsidiary Social Media Pages.

251. The Kroger Co.'s conduct constitutes willful contributory copyright infringement.

252. Plaintiffs have been damaged, and will continue to be damaged, by the Kroger Co.'s acts of contributory infringement.

253. Plaintiffs are entitled to injunctive relief prohibiting the Kroger Co. from further acts of contributory infringement.

254. In addition, as a direct and proximate result of the Kroger Co.'s contributory infringement of Sony Music's copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including the Kroger Co.'s profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

255. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**COUNT IV: VICARIOUS INFRINGEMENT**

(as to all Defendants)

256. In the alternative to the direct infringement claim, to the extent any of the Videos were created and/or posted by advertising or marketing agencies compensated by any of the Kroger Parties, including CB&S Advertising Agency, Inc., and those third parties, not any of the Kroger Parties, are directly liable for the unauthorized use of the Sony Music Recordings in the Videos, the Kroger Party on whose behalf, and for whose benefit, the Video was created or posted is vicariously liable for those infringing acts.

257. The Kroger Parties are also vicariously liable for the Videos posted and/or created by the third-party influencers or other third parties promoting the Kroger Party's brands, social media accounts and/or products.

258. Through these unauthorized uses, such third parties have unlawfully reproduced, prepared derivative works from, publicly performed the Sony Music Recordings listed in Exhibit 1 via digital audio transmission, and/or distributed the Sony Music Recordings in violation of at least 17 U.S.C. § 106(1), (2), (3), and (6), without any authorization, permission, license, or consent from Sony Music.

259. As described above, the Kroger Parties have the right, ability, and authority to control and supervise the creation, posting, and dissemination of videos, including the Videos, created by advertising and marketing agencies and posted on its Social Media Pages. This authority is evidenced by: (a) KPM's and CB&S Advertising Inc.'s coordinated marketing and KPM's mandatory creative approval process, which requires Campaign Operations specialists to review and formally approve all advertising content before publication, and (b) the Kroger Parties' ability to select which videos are published to its own Social Media Pages, to review content before posting, and to take down any infringing content at any time.

260. As described above, the Kroger Parties also have the right, ability, and authority to control and supervise the creation and posting of videos advertising the

Kroger Parties and/or their products, including the Videos, created or posted by its influencers and other third parties, including through their ability to select which videos are published, to review content before posting, withhold payment, and to require the take down of any infringing content.

261. The Kroger Parties also collaborated directly with influencers through social media platforms to create and publish promotional content advertising the Kroger Parties and their products. Through these collaborations, the Kroger Parties caused the promotional content to appear simultaneously on both the influencer's social media account and the Kroger Party's official social media account. These collaborations demonstrate that the Kroger Parties knowingly participated in, approved, and promoted influencer-generated content advertising their brands, stores and products, and further evidence the Kroger Parties' ability to supervise, control, and direct the publication and dissemination of such content.

262. Upon information and belief, the Kroger Parties failed to exercise their right and ability to control and supervise the infringing activity.

263. As described above, the Kroger Parties failed to exercise their right and ability to require the take down of the infringing Videos, despite knowledge of the infringement.

264. As described above, the Kroger Parties receive a direct financial benefit from the inclusion of Sony Music's recordings in the Videos, as well as from the duplication, public performance via digital audio transmission, and/or distribution of Sony Music's recordings contained in the Videos.

265. The exploitation of the Sony Music Recordings in the infringing Videos posted by third parties saves the Kroger Parties the cost of a license, increases the Kroger Parties' sales, enhances the visibility of the Kroger Parties' brands and their products, and drives users that would not otherwise view the Social Media Pages to its accounts and pages that promote the Kroger Parties' brands, stores, and products.

266. Sony Music has been damaged, and will continue to be damaged, by the Kroger Parties' knowing, deliberate, and willful acts of vicarious infringement.

267. Sony Music is entitled to injunctive relief prohibiting the Kroger Parties from further acts of vicarious infringement.

268. As a direct and proximate result of the Kroger Parties' vicarious infringement of Sony Music's copyrights and exclusive rights under copyright, Sony Music is entitled to its actual damages, including each Kroger Party's profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Sony Music's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

269. Sony Music is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT V: CONTRIBUTORY INFRINGEMENT

(as to all Defendants)

270. Sony Music incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

271. In the alternative to Sony Music's claim for direct infringement, to the extent any of the Videos were created and/or posted by advertising or marketing agencies compensated by any of the Kroger Parties, including CB&S Advertising Agency, Inc., and those third parties, not any of the Kroger Parties, are directly liable for the unauthorized use of the Sony Music Recordings in the Videos, the Kroger Party on whose behalf, and for whose benefit, the Video was created or posted, is contributorily liable for those infringing acts.

272. The Kroger Parties are also contributorily liable for the Videos posted and/or created by its third-party influencers and other third parties promoting that Kroger Party's brands, social media accounts and/or products.

273. Through these unauthorized uses, such third parties have unlawfully reproduced, prepared derivative works from, publicly performed via digital audio transmission, and/or distributed the Sony Music Recordings listed in Exhibit 1, in violation of at least 17 U.S.C. § 106(1), (2), (3), and (6), without any authorization, permission, license, or consent from Sony Music.

274. As described above, the Kroger Parties actively cause, and thereby induce third-party infringement through specific acts, including without limitation: (a) directing the creation of the Videos through detailed content guidelines and branding requirements; (b) participating in collaboration posts with third-party influencers thus actively participating in the publication, promotion, and dissemination of the infringing content; (c) incentivizing viral content through commission-based compensation that rewards high engagement; (d) providing the products, promotional codes, and subject matter featured in the Videos; (e) requiring influencers and other third parties to tag the Kroger Parties' accounts and use branded hashtags; (f) on information and belief, reviewing and approving the Videos created by its influencers and the advertising agencies they engaged, including the use of infringing sound recordings in the Videos, and/or otherwise suggesting or encouraging the use of popular and trending sound recordings, including the Sony Music Recordings, in such Videos; and (g) causing the Videos to be posted on the Social Media Pages or distributed through its influencer's and other third parties' networks.

275. Through the foregoing acts, among others, the Kroger Parties actively encourage and induce the infringing reproduction, preparation of derivative works from, distribution, and/or public performance via digital audio transmission of the Sony Music Recordings contained in the Videos.

276. The Kroger Parties' conduct constitutes willful contributory copyright infringement.

277. Plaintiffs have been damaged, and will continue to be damaged, by the Kroger Parties' acts of contributory infringement.

278. Plaintiffs are entitled to injunctive relief prohibiting the Kroger Parties from further acts of contributory infringement.

279. In addition, as a direct and proximate result of the Kroger Parties' contributory infringement of Sony Music's copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including each Kroger Party's profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

280. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment from this Court in Plaintiffs' favor against Defendants:

a. A declaration that Defendants have willfully infringed Sony Music's copyrighted sound recordings in violation of the Copyright Act—including sound recordings originating outside of the United States for which Sony Music has the right to pursue these claims under the Berne Convention—and, with respect to the Pre-1972 Recordings identified in Exhibit 1, engaged in unauthorized use of those recordings in violation of 17 U.S.C. § 1401;

b. A permanent injunction requiring Defendants and their agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting,

inducing, and/or participating in the infringement of, any of Plaintiffs' rights protected by the Copyright Act;

c. An order requiring Defendants to render a full and complete accounting to Plaintiffs for their profits, gains, advantages, and the value of the business opportunities received from their infringing activities;

d. For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendants' *willful* infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiffs' election, Plaintiffs' actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

e. For an award of Plaintiffs' costs in this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

f. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

g. For such other and further relief as the Court deems proper.

**JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues that are so triable.

Respectfully Submitted,

Dated: August 21, 2026

PROSKAUER ROSE LLP

By: <u>*/s/ Christina H, Kroll*</u>
Christina H. Kroll (SBN 323026)
ckroll@proskauer.com
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 557-2900

David Munkittrick*
Nicole Sockett*
Dakshina H. Chetti*
11 Times Square
New York, NY 10036
Tel: 212-969-3000
dmunkittrick@proskauer.com
nsockett@proskauer.com
dchetti@proskauer.com
* *Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs*