William P. Atkins (Pro Hac Vice Application Forthcoming)
*wpa@cushmanlaw.com*
Rebecca M. Hale (SBN 194240)
*rmh@cushmanlaw.com*
**CUSHMAN PARTNERS LLC**
1100 H Street NW, Suite 740
Washington, D.C. 20001
Telephone: (202) 991-6000

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
A. Alexander Lowder (SBN 269362)
*alowder@larsonllp.com*
Ranja F. Rasul (SBN 336221)
*rrasul@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendants The Kroger Co., 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Shop-Rite LLC, Harris Teeter, LLC, Murray's Cheese LLC, Murray's LIC LLC, Relish Labs LLC and Kroger Limited Partnership
I

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, ALAMO RECORDS LLC, ARISTA MUSIC, ARISTA RECORDS LLC, LAFACE RECORDS LLC, PROVIDENT LABEL GROUP LLC, RECORDS LABEL LLC, SONY MUSIC ENTERTAINMENT US LATIN LLC, ULTRA RECORDS LLC, and ZOMBA RECORDING LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>THE KROGER CO., 84.51° LLC, DILLON COMPANIES, LLC, RALPHS GROCERY COMPANY, | Case No. 2:26-cv-09358-GW-DMK<br><br>Assigned to Hon, George H. Wu<br>Magistrate Judge Diana M. Kwok<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER FED. R. CIV. P. 8, 12(b)(2), 12(b)(3), AND 12(b)(6), OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER RULE 12(e), BY DEFENDANTS THE KROGER CO., 84.51° LLC, DILLON COMPANIES, LLC, RALPHS GROCERY COMPANY, FRED MEYER STORES, INC., FRED MEYER** |

FRED MEYER STORES, INC., FRED MEYER JEWELERS, INC., SMITH'S FOOD & DRUG CENTERS, INC., ROUNDY'S, INC., ROUNDY'S ILLINOIS, LLC, MEGA MARTS, LLC, ULTRA MART FOODS, LLC, ULTIMATE MART, LLC, SHOP-RITE LLC, HARRIS TEETER, LLC, MURRAY'S CHEESE LLC, MURRAY'S LIC LLC, RELISH LABS LLC, KROGER LIMITED PARTNERSHIP I, VITACOST.COM, INC., AND DOES 1–50,

Defendants.

**JEWELERS, INC., SMITH'S FOOD & DRUG CENTERS, INC., ROUNDY'S, INC., ROUNDY'S ILLINOIS, LLC, MEGA MARTS, LLC, ULTRA MART FOODS, LLC, ULTIMATE MART, LLC, SHOP-RITE, LLC, HARRIS TEETER, LLC, MURRAY'S CHEESE, LLC, MURRAY'S LIC LLC, RELISH LABS LLC, KROGER LIMITED PARTNERSHIP I**

[*Filed concurrently with Notice of Motion; Declaration of Ann Dembowski-Fedder On Behalf of Roundy's Inc; Declaration of Scott Strumpf On Behalf of Murray's LIC LLC; Declaration of Taryn G. Mecia On Behalf of Harris Teeter, LLC; Declaration of Ann Dembowski-Fedder On Behalf of Roundy's Illinois, LLC; Declaration of Ann Dembowski-Fedder On Behalf of Mega Marts, LLC; Declaration of Ann Dembowski-Fedder On Behalf of Shop-Rite LLC; Declaration of Ann Dembowski-Fedder On Behalf of Ultra Mart Foods LLC; Declaration of Ann Dembowski-Fedder On Behalf of Ultimate Mart, LLC; Declaration of Margaret W. Piedel; [Proposed] Order*]

Date: January 14, 2027
Time: 8:30 a.m.
Crtrm.: 9D

Trial Date: None

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. Defendants Challenging Personal Jurisdiction .......... 3

III. PERSONAL JURISDICTION .......... 5

A. There Is No General Jurisdiction over the PJ Defendants .......... 6

B. There Is No Specific Jurisdiction over the PJ Defendants .......... 6

IV. VENUE FOR PJ DEFENDANTS IS IMPROPER IN THIS DISTRICT .......... 10

V. THE COMPLAINT DOES NOT IDENTIFY EACH PLAINTIFF'S QUALIFYING INTEREST IN THE RECORDINGS AT ISSUE .......... 11

A. Each Plaintiff Must Plead A Qualifying Interest in the Work and Right Asserted .......... 11

B. Collective Ownership Allegations Do Not Allocate the Asserted Rights .......... 11

C. Exhibit 1 Identifies No Owner .......... 12

D. Categories of Claims That Fail as a Matter of Law .......... 13

E. Relief Requested .......... 14

VI. THE COMPLAINT DOES NOT ADEQUATELY IDENTIFY THE RESPONSIBLE DEFENDANT FOR CERTAIN USES .......... 14

VII. THE CONTRIBUTORY INFRINGEMENT COUNTS (III & V) FAIL .......... 15

VIII. THE VICARIOUS LIABILITY COUNTS (II AND IV) FAIL .......... 18

IX. EXPIRED LICENSE CLAIMS FAIL .......... 20

X. DOES 11 THROUGH 50 SHOULD BE STRICKEN .......... 20

XI. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .......... 16

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) .......... 10

*Arias v. Universal Music Grp.*, No. 21-cv-02551 (APM), ECF No. 30 (D.D.C. Nov. 10, 2022) .......... 14, 16, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 1

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .......... 10

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) .......... 10, 11

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc) .......... 7, 8, 14

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.* 582 U.S. 255 (2017) .......... 6

*Calder v. Jones*, 465 U.S. 783 (1984) .......... 5, 7

*Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583 (2026) .......... 2, 16, 17

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .......... 6

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
870 F.3d 978 (9th Cir. 2017) .......... 12

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) .......... 18, 19

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 9

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019) .......... 1, 13

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 12

*L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*,
No. 2:16-cv-09325-RSWL, 2017 WL 1535084 (C.D. Cal. Apr. 27, 2017) .......... 11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 5, 7

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) .......... 20

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .......... 18

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015) .......... 11

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......... 5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 18, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F. 3d 657 (9th Cir. 2017) .......... 18

*Piedmont Label Co. v. Sun Garden Packing Co.*,
598 F.2d 491 (9th Cir. 1979) .......... 10

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 8

*Righthaven LLC v. Hoehn*,
716 F.3d 1166 (9th Cir. 2013) .......... 11

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 5, 7, 10

*Silvers v. Sony Pictures Ent., Inc.*,
402 F.3d 881 (9th Cir. 2005) (en banc) .......... 11

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC*,
No. 19-17272, ECF No. 88, slip op. (D.N.J. Aug. 31, 2020) .......... 12

*United States v. Bestfoods*,
524 U.S. 51 (1998) .......... 18

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) .......... 20

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 6, 7, 8, 9

**Federal Statutes**

17 U.S.C.
§ 101 .......... 13
§§ 101, 411(a) .......... 13
§§ 204(a), 410(c), 501(b) .......... 12
§ 411(a) .......... 1, 13, 20
§§ 411(a), 1401 .......... 1
§ 501(b) .......... 11, 12
§ 507(b) .......... 2, 20
§ 1401(a)(1) .......... 13

28 U.S.C.
§ 1400(a) .......... 1
§ 1406(a) .......... 10, 11, 21

Fed. R. Civ. P. 8 .......... 1, 14

Fed. R. Civ. P. 12(b)(2) ........ 5, 10

Fed. R. Civ. P. 12(b)(2), (3) ........ 1, 11, 20, 21

Fed. R. Civ. P. 12(b)(6) ........ 1, 11, 21

Fed. R. Civ. P. 12(e) ........ 2, 11, 14, 21

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion asks the Court to require what every pleading must supply: who is suing whom, and for what. Ten Plaintiffs, pleading as one, accuse nineteen Defendants, also pleaded as one, of infringing hundreds of recordings listed in an exhibit that identifies no owner. Resolving these defects now, before scheduling, discovery, and dispositive motions proceed on this pleading, will spare the Court and the parties unnecessary time and expense.

Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," including fair notice of the "'grounds' on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Allegations that ten Plaintiffs "own[] and/or control[]" a catalog, and that Defendants "jointly or individually" posted infringing content, are consistent with no Plaintiff owning any recording and no particular Defendant doing anything.

The Complaint should be dismissed for six independent reasons.

*First*, eight Defendants (the "**PJ Defendants**") are not subject to personal jurisdiction in California, and venue in this District is improper as to them. Fed. R. Civ. P. 12(b)(2), (3); 28 U.S.C. § 1400(a).

*Second*, the Complaint does not connect each Plaintiff to a qualifying interest in an identified recording. Three categories also fail as a matter of law: (1) pending applications; (2) recordings labeled only "Covered by the Berne Convention" with no facts pleaded to exempt them from § 411(a); and (3) pre-1972 recordings. Fed. R. Civ. P. 12(b)(6); 17 U.S.C. §§ 411(a), 1401.

*Third*, the Complaint does not plead which Defendant is responsible for which use. Fed. R. Civ. P. 8(a)(2).

*Fourth*, the contributory-infringement counts (Counts III and V) do not plausibly connect the required intent to the applicable Defendant and infringing conduct at issue. Knowledge and normal marketing support alone do not establish

inducement. See *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 590-93 (2026).

*Fifth*, the vicarious-liability counts (Counts II and IV) do not allege, for each Defendant, both the right and ability to supervise the infringing conduct and a direct financial benefit from it.

*Sixth*, two claims fail for reasons specific to them. The claims based on the expired 2020 license involve a pre-1972 recording, allege at most a breach of covenant, and are time-barred. 17 U.S.C. § 507(b). And the Complaint names forty more Doe defendants than the Local Rules permit. L.R. 19-1.

This motion is brought by every named Defendant except Vitacost.com, Inc. (together, the "**Moving Defendants**"). In the alternative, the Moving Defendants request a more definite statement under Rule 12(e).

## II. STATEMENT OF FACTS

Ten separate entities sue as one undifferentiated "Sony Music," merged together in a first page footnote. Compl. at 1 n.1, ¶¶ 37–46. They allege only that this collective "owns and/or controls the copyrights to, or otherwise possesses the exclusive rights to enforce copyrights in," its catalog. *Id.* ¶ 9; *see id.* ¶¶ 90, 206.

The same footnote merges every Defendant, nineteen named companies and fifty Doe defendants, together as the "Kroger Parties." Compl. at 1 n.1. The fifty Does exceed by forty the number allowed by this District's Local Rules. L.R. 19-1. The "Kroger Parties" also include Vitacost.com, Inc., whose sale Kroger announced on January 8, 2026, seven months before Plaintiffs filed suit. Compl. ¶ 48 n.4.

Exhibit 1 to the Complaint lists 392 rows under the headings "SME Artist," "SME Track," "Posted By," "SR Number," and "Link." ECF No. 1-1 (pg. 16 of 23 shown below). It identifies no owner-plaintiff, no legal-entity Defendant, and no posting dates. The exhibit cites 159 distinct registration numbers. In 110 rows, the "SR Number" column instead identifies a pre-1972 recording (59 rows), invokes the Berne Convention (21 rows), supplies renewal or other older registration numbers

(20 rows), supplies performing-arts (PA) registration number (5 rows), or states that the registration is pending (5 rows). The "Posted By" column lists social-media handles, many indicating non-parties. Exh. 1, rows 101, 109, 129–130, 138, 203, 211, 257, 269, 277, 318, 345, 358, 366–367, 369, 379.

| # | SME Artist | SME Track | Posted By | SR Number | Link |
|---|---|---|---|---|---|
| 269 | Miley Cyrus | Flowers | homeswithalicia | SR0000962790 | https://www.instagram.com/stories/harristeeter/3627536361789591258 |

Eighteen of the nineteen named Defendants bring this motion, together the "**Moving Defendants**": The Kroger Co., 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Shop-Rite, LLC, Harris Teeter, LLC, Murray's Cheese LLC, Murray's LIC LLC, Relish Labs LLC, and Kroger Limited Partnership I.

### A. <u>Defendants Challenging Personal Jurisdiction</u>

Eight Moving Defendants are not organized or headquartered in California, and the Complaint alleges no store, office, or employee of theirs here. The PJ Defendants are a holding company with no social media, a New York restaurant, an East Coast retail grocer, an Illinois grocer, and four LLC grocers in Wisconsin:

1. Roundy's, Inc. is a holding company that does not operate any retail stores, maintain its own marketing division, or operate a social-media account. Exh. A, Roundy's, Inc. Decl. ¶ 4–5. It is a Delaware corporation with a Milwaukee, Wisconsin address. Compl. ¶ 58.
2. Murray's LIC LLC is a New York LLC whose restaurant in Long Island City, New York, closed in September 2024. Compl. ¶ 67; Exh. B, Murray's LIC LLC Decl. ¶ 4. The personnel responsible for administering Murray's LIC LLC's social media accounts performed

that work in New York; the personnel who maintained records concerning those accounts also worked in New York. *Id*. at ¶ 5. Its marketing was intended to attract customers to that New York restaurant, which closed two years ago. *Id*. at ¶ 4–5.

3. Harris Teeter, LLC is a North Carolina LLC headquartered in Matthews, North Carolina. Compl. ¶ 68. Its stores are located in the Mid-Atlantic and South, and its marketing was directed to local grocery customers. Exh. C, Harris Teeter Decl. ¶ 4–5. Its alleged infringement consists of reposting an Instagram Story that the Complaint says was available for twenty-four hours. Compl. ¶ 68; Exh. 1, rows 268–269.
4. Roundy's Illinois, LLC is a Wisconsin LLC headquartered in Milwaukee. It operates Mariano's grocery stores only in Illinois, and its marketing was directed to local grocery customers. Compl. ¶ 61; Exh. D, Roundy's Illinois Decl. ¶ 4, 6.
5. Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, and Ultimate Mart, LLC are Wisconsin LLCs operating "retail grocery stores in Wisconsin under the Metro Market and Pick 'n Save banners." Compl. ¶ 64. Their accused marketing efforts were directed to local grocery customers. Id.; Exh. E, Mega Marts Decl. ¶ 6; Exh. F, Shop-Rite Decl. ¶ 6; Exh. G, Ultra Mart Foods Decl. ¶ 6; and Exh. H Ultimate Mart Decl. ¶ 6.

The Complaint's jurisdictional allegations rely principally on allegations that social-media posts were directed nationwide "including California"; that some banner websites include a California privacy notice; and that their products are "available for delivery to California consumers" through DoorDash and Instacart. Compl. ¶¶ 56–69. Those allegations must be evaluated separately for each PJ Defendant.

Instacart and DoorDash deliver groceries *locally*, as their websites explain. "Using the Instacart app or website, you can shop for groceries (and more!) from a

store *near you*. After you have placed your order, Instacart will connect you with a personal shopper in your area to shop and deliver your order." Exh. I, Piedel Dec. Ex. MP1, https://www.instacart.com/p/how-does-instacart-work (emphasis added). DoorDash is similar, "Customers place an order through the DoorDash app or website. A Dasher (independent delivery driver) picks up the order from the restaurant or store and delivers it." *Id.*, Ex. MP2, https://about.doordash.com/en-us/company.

The FAQs on deliveries from Mariano's, Pick 'n Save, and Metro Market all state, "A delivery driver will drop your groceries off on your doorstep"[1]:

> **What is Delivery and how does it work?**
>
> Delivery is one of our online ordering services. You can shop online for the products you need and get them delivered to your doorstep the same day. Planning ahead? You can also choose a time slot for the next day or later.
>
> Here's how: place your order online, and the shopping will be done for you. Once the order is shopped and ready, you'll get an alert that it's on its way. A delivery driver will drop your groceries off on your doorstep. Start your delivery order here.

## III. <u>PERSONAL JURISDICTION</u>

Plaintiffs must establish personal jurisdiction or else face dismissal. *See* Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden to make a *prima facie* showing of personal jurisdiction through admissible evidence, rather than just "simply rest[ing] on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." (citation omitted)).

When a defendant moves to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to establish the court's personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Each defendant's contacts must be assessed individually. *Calder v. Jones*, 465 U.S.

---

[1] Exh. I, Piedel Decl. Ex. 7–9.

783, 790 (1984).

Personal jurisdiction may be general, allowing all-purpose jurisdiction over a defendant essentially at home in the forum, or specific, allowing jurisdiction over claims sufficiently connected to the defendants' jurisdiction derived from a defendant's contacts with California, if sufficiently related to the claims at issue. *Bristol-Myers Squibb Co. v. Superior Court of California*, *San Francisco Cnty.* 582 U.S. 255, 262 (2017).

**A. <u>There Is No General Jurisdiction over the PJ Defendants</u>**

A corporation is subject to general jurisdiction only where it is "essentially at home" paradigmatically, its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014) (quotation omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). None of the PJ Defendants is incorporated or organized in California or has its principal place of business here. Compl. ¶¶ 58, 61, 64, 67–69; Exhs. A to H at ¶ 3–4. The Complaint does not allege otherwise. There is no general jurisdiction.

**B. <u>There Is No Specific Jurisdiction over the PJ Defendants</u>**

Specific jurisdiction depends "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). The Ninth Circuit evaluates specific jurisdiction under a three-part test:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial

justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Plaintiffs bear the burden of satisfying the first two prongs of the test. *Briskin v. Shopify, Inc.,* 135 F.4th 739, 750-51 (9th Cir. 2025) (en banc) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If they satisfy those prongs, the defendant must present a compelling case that exercising jurisdiction would be unreasonable. *Id*.

**Purposeful Direction**. To analyze whether a tort was purposefully directed to the forum state, the Ninth Circuit employs the "*Calder* effects" test, which "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo*, 647 F.3d at 1228 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

The PJ Defendants are incorporated and headquartered outside of California. As noted in the various declarations, their marketing efforts were understandably focused on the local areas around their retail grocery stores and the now-closed restaurant in New York, all of which are not in California. Compl. ¶¶ 61, 64, 67–69; Exhs. A and B at ¶ 5; Exhs. D – H at ¶ 6. Same-day and next-day delivery of groceries from a store in Milwaukee or Chicago to Los Angeles would be highly unlikely.

Plaintiffs' assertion that posts and websites were directed nationwide "including California" substitutes the platforms' geographic reach for Defendant's own conduct. As noted in the declarations, retail grocery stores focus on the areas around their stores, not to markets thousands of miles away. Whatever reached California got there through the platforms' distribution and "random, fortuitous, or attenuated" contacts do not support jurisdiction. *Walden*, 571 U.S. at 286.

That a California resident could encounter a post from an out-of-state grocer does not itself establish that Defendant purposefully directed the challenged conduct

toward California. If it did, virtually every online post would subject one to jurisdiction here. "[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction." Briskin, 135 F.4th at 752 (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997)). *Briskin* preserves the requirement of purposeful forum contacts beyond mere internet accessibility. *Briskin*, 135 F.4th at 757-759 n.16.

The Complaint further alleges that a California privacy notice, buried in the websites of Harris Teeter, Mariano's, Pick 'n Save, and Metro Market, evidences purposeful availment by them. Compl. ¶¶ 58, 61, 68. Each of these websites has 24 state-specific disclosures, of which California is but one. Exh. I, Piedel Decl. Exs. MP3 – MP6. A disclosure that addresses residents of 24 states is not a choice to do business in any one of them.

The Complaint mentions "Kroger's nationwide marketing strategy" and alleges that products are "available for delivery to California consumers through Kroger's nationwide partnerships with DoorDash and Instacart." But, as explained above, the PJ Defendants' deliveries are local. The nationwide reach of Instacart and DoorDash does not establish that either service delivers products from a particular PJ Defendants' stores to California. Except for Roundy's, Inc., each PJ Defendant also has or had its own marketing personnel. General references to Kroger's nationwide activities do not establish any particular PJ Defendants' contacts with California. Nor are a parent's website activities automatically attributable to its subsidiaries. See *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070–73 (9th Cir. 2015). Jurisdiction must rest on contacts each defendant itself creates with the forum. *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014).

The Plaintiffs' personal jurisdiction claims also fail because the forums in which the PJ Defendants' actions were felt were in the local areas where their grocery stores and former restaurant were—all well outside of California. Again, "random, fortuitous, or attenuated" contact cannot support jurisdiction. *Walden*, 571

U.S. at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

**Relatedness**. Plaintiffs' claims must arise out of or relate to each PJ Defendant's California contacts. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359, 362 (2021). Each Plaintiff is organized and headquartered outside of California and only one alleges to have an office here. Compl. ¶¶ 37–46. The forum's contacts from the first step must be the defendant's own, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277, 285.

The Complaint's bare inference that a population-based share of viewers must have been in California does not adequately connect an alleged post to defendant's activities in this forum. Nor can an affiliate's contacts replace the required relationship between the applicable Defendant, this forum, and these claims.

Harris Teeter and Roundy's, Inc. illustrate the point. Harris Teeter's alleged use is one Instagram Story that it reposted and was visible for 24 hours. Compl. ¶ 68. Roundy's, Inc. has no social-media presence at all. Exh. A, Decl. ¶ 5. That a post could be viewed in California, as it could be anywhere in the world, is the kind of "random, fortuitous, or attenuated" contact that cannot support jurisdiction. *Walden*, 571 U.S. at 286. The Court should assess the contacts associated with those particular uses and entities, rather than infer California-directed activity from the collective "Kroger Parties" label.

Plaintiffs must show that their claims against each PJ Defendant arise out of or relate to that Defendant's own California contacts. *Ford Motor*, 592 U.S. at 359; *Walden*, 571 U.S. at 284. They have not done so for any of them.

**Exercising Jurisdiction Would Be Unreasonable**. Even if Plaintiffs could show purposeful direction, haling six out-of-state retail grocers, a closed restaurant, and a holding company into Los Angeles over posts directed to their local non-California customers would not comport with fair play and substantial justice, particularly where no Plaintiff is a California resident and the relevant witnesses and

documents are thousands of miles away in the Defendants' home states. *See Schwarzenegger, 374 F.3d at 802.*

The Complaint should be dismissed under Rule 12(b)(2) as to the PJ Defendants. And Plaintiffs' "information and belief" allegations do not warrant jurisdictional discovery. To the extent any is allowed, it should identify the specific facts that could establish the missing contacts; speculation that discovery might uncover a basis for jurisdiction is insufficient. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

## IV. VENUE FOR PJ DEFENDANTS IS IMPROPER IN THIS DISTRICT

As to venue for the PJ Defendants, Plaintiffs allege "each Defendant resides in and/or may be found in this District, in that each Defendant would be amenable to personal jurisdiction in this District," and because "a substantial part of the events giving rise to Sony Music's claims occurred in this District." Compl. ¶ 36 (citing 28 U.S.C. §§ 1391(b) and 1400(a)). The Complaint alleges no office, store, employee, or agent of any PJ Defendant in the Central District, and no accused post created or uploaded here. *See id.* ¶¶ 56–69. Instead, it relies on internet availability, asserted California transactions and delivery, and coordinated marketing. Compl. ¶¶ 33–36, 58–66. Venue nevertheless requires a Defendant-specific, District-specific showing.

A defendant "may be found" in a district if it would be subject to personal jurisdiction there were the district a separate state. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Once venue is challenged, the plaintiff bears the burden of showing that it is proper, *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979), as to each defendant and each claim, *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer" the case. 28 U.S.C. § 1406(a).

None of the PJ Defendants are subject to personal jurisdiction in California. Still less are they subject to it in the Central District, whose contacts are assessed as

though it were a separate state. *Brayton Purcell*, 606 F.3d at 1128. None of them "resides" here, and none "may be found" here. *See L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*, No. 2:16-cv-09325-RSWL, 2017 WL 1535084, at *2 (C.D. Cal. Apr. 27, 2017). The claims against the PJ Defendants should be dismissed under Rule 12(b)(3) and § 1406(a).

## V. THE COMPLAINT DOES NOT IDENTIFY EACH PLAINTIFF'S QUALIFYING INTEREST IN THE RECORDINGS AT ISSUE

The Complaint and Exhibit 1 do not adequately connect each of ten Plaintiffs to the particular interest asserted in each recording. Registration numbers do not supply that allocation, and many entries rely on other forms of protection or pending applications. The omission warrants dismissal or at least a more definite statement under Rule 12(e).

### A. Each Plaintiff Must Plead A Qualifying Interest in the Work and Right Asserted

For ordinary copyright claims, 17 U.S.C.§ 501(b) permits the legal or beneficial owner of an exclusive right to sue for infringement of that right during ownership. A bare right to sue does not suffice. *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 884–885, 890 (9th Cir. 2005) (en banc); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169–70 (9th Cir. 2013). Statutory entitlement to sue is a merits issue under Rule 12(b)(6). *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015). The separate rules governing pre-1972 recordings and "Covered by the Berne Convention" are addressed below.

### B. Collective Ownership Allegations Do Not Allocate the Asserted Rights

The Complaint alleges that "Sony Music" collectively owns or controls copyrights or possesses exclusive enforcement rights. Compl. ¶¶ 9, 90, 206. Those alternatives do not identify which Plaintiff holds the interest asserted in a particular recording. For an ordinary copyright claim, control or enforcement authority must

rest on an interest cognizable under 17 U.S.C. § 501(b). See *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983–88 (9th Cir. 2017). A conclusory ownership assertion does not dispense with plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Keep On Kicking Music, Inc. v. Universal Music Grp.*, Inc., No. 23-cv-4400, ECF No. 141, slip op. at 10–11 (S.D.N.Y. June 12, 2025). Paragraph 245 specifically refers to "SME's copyrights," but does not explain the interests asserted by the other nine Plaintiffs. The objection is the missing claimant-to-right connection.

### C. <u>Exhibit 1 Identifies No Owner</u>

Exhibit 1 lists 392 rows under the headings "SME Artist," "SME Track," "Posted By," "SR Number," and "Link." ECF No. 1-1. It has no owner column. It does not say which of the ten Plaintiffs claims any recording, which right that Plaintiff holds, or how it acquired that right. Plaintiffs must know which entity owns each recording and have not said. Other such plaintiffs have listed "the name of the Plaintiff who owns the copyright" for each recording. *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 19-17272, ECF No. 88, slip op. at 2 n.2 (D.N.J. Aug. 31, 2020).

Registrations show who claimed a work when it was registered, not who owned an exclusive right when the alleged infringement occurred. 17 U.S.C. §§ 204(a), 410(c), 501(b); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). The burden of pleading ownership cannot be shifted to Defendants and the Court by way of 159 registration numbers.

Beyond those 159 registration numbers, Exhibit 1 has 110 rows that cite no sound-recording registration. Instead, the "SR Number" cells read: (a) "Pre-1972" (59 rows); (b) "Covered by the Berne Convention." (21 rows); (c) renewal or 1970s-era registration numbers (20 rows); (d) performing-arts (PA) registration numbers (5 rows); and (e) "Registration pending" (5 rows). Many of the SR numbers that do appear cover albums. Others are inconsistent across rows. Still others are cited for

remixes, edits, or "sped up" versions credited to other artists. *E.g.*, Exh. 1, rows 24–25, 56, 60–62, 287, 293.

### D. Categories of Claims That Fail as a Matter of Law

**Unregistered works.** Plaintiffs list "Registration pending" for four recordings in five rows, including "Dai Dai," an example the Complaint features. Exh. 1, rows 167–168, 255, 344–345; Compl. ¶¶ 59, 62. One cannot plead copyright infringement on a pending application because, according to the U.S. Supreme Court, it cannot satisfy 17 U.S.C. § 411(a). *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019).

**Berne Convention**. In 21 rows, Exhibit 1 lists no registration number, only "Covered by the Berne Convention." Exh. 1, rows 87, 128–130, 134–135, 193–199, 219, 233, 236–237, 311, 321, 348–349. Section 411(a) generally requires registration before suing for infringement of a "United States work," a classification that turns on publication and other facts specified in 17 U.S.C. § 101. Although the United States is a signatory to the Berne Convention, merely stating "Berne Convention" coverage does not establish an exemption. Yet Plaintiffs identify neither the country nor the date of first publication for these recordings and allege no other facts explaining why they are exempt from § 411(a)'s registration requirement. A bare Berne label cannot substitute for facts supporting an exemption. The claims concerning these recordings should therefore be dismissed unless Plaintiffs adequately plead registration or a basis for proceeding without it. 17 U.S.C. §§ 101, 411(a).

**Pre-1972 recordings.** Fifty-nine rows concern recordings fixed before 1972. These are not protected under § 106, yet all five counts allege infringement of copyrights under § 106. To the extent there is federal protection it is a separate right under § 1401. Compl. ¶¶ 204–280; 17 U.S.C. § 1401(a)(1). While § 1401 is referenced in the prayer for relief, no count invokes § 1401 and the Complaint does not identify which Plaintiff, if any, is the rights owner.

E. **Relief Requested**

The Court should dismiss the Complaint. Claims on "Registration pending" recordings should be dismissed without prejudice to a new action after registration. The copyright claims based on Berne Convention registrations and pre-1972 recordings should be dismissed similarly. Any amended complaint should identify for each recording: (1) the Plaintiff that owns it and the § 106 right claimed; (2) the basis of that Plaintiff's title; (3) the proper registration relied on, (4) the identity of the defendant, as noted below, and should omit any unidentified works. See Compl. ¶¶ 9, 205. Alternatively, the Court should order a more definite statement under Rule 12(e).

## VI. THE COMPLAINT DOES NOT ADEQUATELY IDENTIFY THE RESPONSIBLE DEFENDANT FOR CERTAIN USES

Rule 8 requires allegations sufficient to identify the defendant responsible for the actionable conduct. In *Gibson v. City of Portland*, 165 F.4th 1265, 1287–91 (9th Cir. 2026), the Ninth Circuit upheld dismissal of a complaint that asserted claims against multiple defendants without adequately connecting particular defendants to particular acts and causes of action.

The same principle applies to copyright claims. *See Arias v. Universal Music Grp.*, No. 21-cv-02551 (APM), ECF No. 30, at 12 (D.D.C. Nov. 10, 2022) (plaintiff "cannot survive a motion to dismiss by 'lumping all the defendants together . . . and providing no factual basis to distinguish their conduct'"). While collective pleading is permissible where facts describe jointly pursued conduct and each entity's role, the question is fair notice, not the use of a collective designation alone. *Briskin*, 135 F.4th 761-62.

The Complaint leaves the identity of the responsible Defendant unresolved for a substantial category of alleged infringements. For example, paragraph 64 alleges that Mega Marts, LLC, Shop-Rite, LLC, Ultra Mart Foods, LLC, and Ultimate Mart, LLC "jointly or individually" operate four social media accounts and

"collectively" posted the challenged items. Paragraph 65 alleges that "one or more of these Defendants" exceeded the asserted license. Paragraph 66 similarly attributes influencer relationships to the four entities "jointly or individually," while paragraph 214 repeats their undifferentiated responsibility for the accounts and posts.

The problem is not confined to these four Wisconsin entities. Rows of Exhibit 1 list handles of non-parties and implicate others with similar handles. Exh. 1, rows 101, 109, 129–130, 138, 203, 211, 257, 269, 277, 318, 345, 358, 366–367, 369, 379. The Complaint also alleges that a non-party agency, CB&S Advertising Agency, Inc., is "responsible for" several Kroger-affiliated pages, that agencies created or posted "some or all of the Videos," and, in Counts IV and V, that the Moving Defendants are secondarily liable "to the extent" such agencies did so. Compl. ¶¶ 80, 162–164, 256, 271. The Complaint does not disclose which posts fall into which category, so a Defendant cannot tell whether it is accused of posting an accused post or of contributing to someone else's post.

The objection is not that multiple Defendants cannot participate in the same infringement or that alternative pleading is prohibited. It is that the Complaint does not identify a sufficiently pleaded basis for holding each of these many Defendants liable. Allegations that an unspecified member of a four-entity group committed infringement do not explain why each member must defend the claim.

This omission compounds the ownership defect. The Complaint leaves Defendants to determine both which Plaintiff asserts the relevant rights and which Defendant allegedly violated it. The Court should require an amended pleading connecting the claimant, recording, responsible Defendant, challenged conduct, and applicable theory of liability. Claims against Defendants for whom that connection is not plausibly alleged should be dismissed.

## VII. THE CONTRIBUTORY INFRINGEMENT COUNTS (III & V) FAIL

Counts III and V fail because they substitute knowledge and ordinary marketing support for facts plausibly establishing the intent required of The Kroger

Co. in Count III and each Moving Defendant in Count V.

Contributory liability requires an underlying act of direct infringement by another. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *Arias*, ECF No. 30, at 14–15. *Cox* requires intent that its service is being used for infringement, shown by affirmative inducement or a service tailored to infringement. *Cox,* 607 U.S. at 590-593. Inducement requires affirmative encouragement directed to infringement. A party induces infringement only if it "actively encourages infringement through specific acts." *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37, 939 & n.12 (2005)).

**Count III** alleges that The Kroger Co. is contributorily liable for the allegedly infringing posts its subsidiaries posted. Compl. ¶¶ 244–255. The theory is that Kroger Co., through Kroger Precision Marketing ("KPM") and CB&S Advertising Agency, Inc., provides "campaign objectives, promotional themes, and other creative direction," and that campaigns that "often capitalize on social media trends driven by the use of trending sound recordings" "inform and influence the selection" of recordings. *Id.* ¶ 248. Count III also relies on cross-brand collaboration posts. *Id.* ¶ 249.

The allegation relies principally on campaign coordination and oversight. Paragraph 248 alleges that themes and trends inform subsidiaries' music choices; that is not an allegation of actively encouraging one to use music without permission. Nor does centralized marketing become a service tailored to infringement merely because some campaigns allegedly used unlicensed music. Plaintiffs even recognize that Kroger has licensed recordings. Compl. ¶¶ 21, 187–88. The Complaint alleges that Kroger could oversee advertising. It does not allege that Kroger did anything to bring about infringement.

**Count V** alternatively seeks secondary liability for agency and influencer uses. Compl. ¶¶ 271–72. Paragraph 274 alleges guidelines, collaboration,

commissions, products and codes, tags, approval of posts and recordings, encouragement of popular recordings, and publication. Paragraph 177 adds engagement and viral-reach incentives. These allegations must plausibly connect the relevant Defendant's conduct <u>and</u> intent to another's infringement.

That connection is missing in Count V. *First*, although the Complaint names some influencers and posts, it does not allocate all challenged third-party uses to the Defendant allegedly responsible for inducing them. See *Arias*, ECF No. 30, at 13–14. *Second*, products, codes, commissions, tags, and engagement objectives describe ordinary influencer marketing and do not alone establish an infringing purpose. *Third*, paragraph 274(f)'s assertion that Defendants approved posts "including the use of infringing sound recordings" must be supported by facts identifying the relevant Defendant and approval conduct. Its alternative reference to encouraging use of popular music does not by itself allege active encouragement of unlicensed use.

Plaintiffs also rely on notices beginning June 30, 2025, tag notifications, prior licenses, and platform terms. Compl. ¶¶ 23, 158, 184–203. Those allegations can support knowledge, but knowledge and failure to prevent infringement alone do not establish contributory intent. The Complaint must also plausibly attribute that conduct to each Defendant named and sued; notice to "Kroger" does not automatically establish inducement by every affiliate.

Counts III and V should be dismissed because they do not plausibly allege that any Defendant intended to bring about infringement. Under *Cox*, that intent requires either inducement, meaning active steps to encourage infringement, or providing a service tailored to infringement. *Cox,* 607 U.S. at 592-594. The Complaint alleges neither. Any amended pleading should identify each Defendant's alleged inducement or tailored service and connect that conduct to the infringement it allegedly intended to cause.

## VIII. THE VICARIOUS LIABILITY COUNTS (II AND IV) FAIL

A defendant is vicariously liable for another's infringement only if it profits "from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930. A plaintiff must plead (1) "a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); and (2) a direct financial benefit, which requires "a causal relationship between the infringing activity and any financial benefit a defendant reaps," *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). The infringing activity must be a draw for customers, "not just an added benefit." *Id.*; *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 673–74 (9th Cir. 2017). A parent corporation is not liable for its subsidiaries' acts merely because it owns them. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

**Count II** alleges that The Kroger Co. is vicariously liable for its subsidiaries' posts because it has "the right, ability, and authority to control and supervise" them "through directing the creative process," including "KPM's mandatory creative approval process." Compl. ¶¶ 234–235. The Complaint recognizes, however, that KPM is actually a division within 84.51° "that sells targeted digital advertising to consumer-packaged goods companies, advertising agencies, and publishers using 84.51°'s first-party retail data." Compl. ¶ 55.

Count II does not adequately connect control and financial benefit between The Kroger Co. and the accused uses. Ownership alone does not establish supervisory authority. *Bestfoods*, 524 U.S. at 61. As to a financial benefit, paragraphs 238–239 assert increased sales, visibility, and traffic benefit for Kroger but those assertions must plausibly connect the recordings' alleged draw to a direct benefit to Kroger, rather than rely solely on the commercial purpose of advertising. *Ellison*, 357 F.3d at 1079; *Giganews*, 847 F.3d at 673–74. Plaintiffs must connect the attribution elements.

**Count IV** alleges, in the alternative and "to the extent" agencies or influencers posted the accused items, that every Moving Defendant is vicariously liable for them. *Id.* ¶¶ 256–257. It alleges an ability to review content, withhold payment, and require takedowns, and it treats collaboration posts as evidence of an "ability to supervise." *Id.* ¶¶ 259–261. Its financial-benefit allegation is that third-party posts "save[] the Kroger Parties the cost of a license," increase sales, and enhance visibility. *Id.* ¶ 265.

Count IV has the same attribution defect. The Complaint names some influencers and alleges that "Defendants" could review, pay for, remove, or collaborate on posts. Compl. ¶¶ 59, 66, 68, 73, 259–61. It never says which Defendant held which power over which influencer's post. That matters because influencers post to their own accounts. A Defendant's ability to delete posts from its own account says nothing about its ability to make an influencer delete a post from the influencer's account. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173–74 (9th Cir. 2007).

The financial-benefit allegations fail for a related reason. Vicarious liability requires a causal link between the infringing activity and a benefit to the defendant. *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). The Complaint offers only generic assertions of savings, sales, and audience traffic, tied to no particular Defendant or post. Compl. ¶ 265. Its one specific theory is that influencer posts "save[] the Kroger Parties the cost of a license." *Id.* But for posts an influencer made on its own initiative, no Defendant would ever have owed a license fee. The fee avoided, if any, was the influencer's. That is not a benefit from infringement drawing customers to a Defendant. On that theory, every advertiser would be vicariously liable for any unlicensed music any promoter chose to use.

Counts II and IV should be dismissed as to each Defendant for whom the Complaint fails to plausibly allege both the right and ability to supervise the infringing conduct and a direct financial benefit from it. Any amended pleading

should identify, for each Defendant and each accused post, the control that Defendant held and the benefit it received.

## IX. EXPIRED LICENSE CLAIMS FAIL

An unidentified "Sony Music" plaintiff alleges that it licensed a 2020 holiday campaign for use on "the internet, and social media" and that Defendants infringed by leaving the posts online after the license "expired on December 31, 2020." Compl. ¶¶ 65, 69–71, 188. Those claims fail for three reasons.

*First*, the recording is designated "Pre-1972" in Exhibit 1 (ECF No. 1-1), so § 106 does not apply to it. *Second*, failing to remove licensed content when a license ends is, at most, a breach of covenant, not infringement. Infringement requires both that the use exceed the license's scope and that the claim be "grounded in an exclusive right of copyright." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 940–41 (9th Cir. 2010). The Complaint identifies no license condition that the continued posting violated. *Third*, the claims are untimely under either theory. Plaintiffs licensed and knew from the outset where they were posted. Any claim accrued when the license expired on December 31, 2020, more than five years before Plaintiffs filed suit. 17 U.S.C. § 507(b). Plaintiffs plead no contract claim. The bar is apparent on the face of the Complaint. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

## X. DOES 11 THROUGH 50 SHOULD BE STRICKEN

"No complaint or petition shall be filed that includes more than ten (10) Doe or fictitiously named parties." L.R. 19-1. The Complaint names fifty. Compl. at 1; *id.* ¶ 85. Does 11 through 50 should be stricken.

## XI. CONCLUSION

The Court should dismiss the claims against the PJ Defendants for lack of personal jurisdiction and improper venue. Fed. R. Civ. P. 12(b)(2), (3). For claims properly before it, the Court should dismiss without prejudice any claims barred by § 411(a) and dismiss deficient ownership, attribution, contributory, and vicarious

claims with leave to amend. An amended pleading should connect the recording and version, Plaintiff's qualifying interest, registration or other statutory basis, responsible Defendant, challenged conduct including date of alleged post, and theory of liability. Does 11–50 should be stricken. Alternatively, the Court should require a focused more definite statement under Rule 12(e).

The Court should dismiss all claims against the eight PJ Defendants for lack of personal jurisdiction and improper venue. Fed. R. Civ. P. 12(b)(2), (3); 28 U.S.C. § 1406(a). The Court should also dismiss the remaining claims to the extent they fail to plead each Plaintiff's qualifying interest, the applicable Defendant's actionable conduct, the statutory prerequisites, and the applicable elements of contributory or vicarious liability. Such would include dismissal without prejudice of the claims on the recordings whose registrations are pending, on the 21 "Berne" recordings, and on the pre-1972 recordings. The Court should also dismiss with prejudice, the untimely expired-license claims and strike Does 11 through 50. And it should dismiss the remaining ownership, attribution, contributory, and vicarious claims under Rule 12(b)(6).

Any amended complaint should identify, for each accused post:

a) the recording and version;
b) the Plaintiff asserting rights in it, the § 106 right claimed, and the basis of that Plaintiff's title;
c) the registration or other statutory basis for suit;
d) the responsible Defendant and the date of the post; and
e) the theory of liability asserted against that Defendant.

Alternatively, the Court should require a more definite statement under Rule 12(e). This relief will define the claims and parties properly before the Court and permit the case to proceed efficiently.

/ / /

/ / /

Dated: November 2, 2026 CUSHMAN PARTNERS LLC

By: */s/ William P. Atkins*
William P. Atkins
Rebecca M. Hale
Attorneys for Defendants The Kroger Co., 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Shop-Rite LLC, Harris Teeter, LLC, Murray's Cheese LLC, Murray's LIC LLC, Relish Labs LLC and Kroger Limited Partnership

Dated: November 2, 2026 LARSON LLP

By: */s/ Stephen G. Larson*
Stephen G. Larson
A. Alexander Lowder
Ranja F. Rasul
Attorneys for Defendants The Kroger Co., 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Shop-Rite LLC, Harris Teeter, LLC, Murray's Cheese LLC, Murray's LIC LLC, Relish Labs LLC and Kroger Limited Partnership

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants The Kroger Co., 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Shop-Rite LLC, Harris Teeter, LLC, Murray's Cheese LLC, Murray's LIC LLC, Relish Labs LLC and Kroger Limited Partnership I, certify that this brief contains 6,522 words, which complies with the word limit set by the Court's Local Rules.

Dated: November 2, 2026 CUSHMAN PARTNERS LLC

By: */s/ William P. Atkins*
William P. Atkins
Rebecca M. Hale
Attorneys for Defendants The Kroger Co., 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Shop-Rite LLC, Harris Teeter, LLC, Murray's Cheese LLC, Murray's LIC LLC, Relish Labs LLC and Kroger Limited Partnership

Dated: November 2, 2026

LARSON LLP

By: */s/ Stephen G. Larson*

Stephen G. Larson
A. Alexander Lowder
Ranja F. Rasul

Attorneys for Defendants The Kroger Co., 84.51° LLC, Dillon Companies, LLC, Ralphs Grocery Company, Fred Meyer Stores, Inc., Fred Meyer Jewelers, Inc., Smith's Food & Drug Centers, Inc., Roundy's, Inc., Roundy's Illinois, LLC, Mega Marts, LLC, Ultra Mart Foods, LLC, Ultimate Mart, LLC, Shop-Rite LLC, Harris Teeter, LLC, Murray's Cheese LLC, Murray's LIC LLC, Relish Labs LLC and Kroger Limited Partnership